UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                             :

| | |
|---|---|
| ARCHER CAPITAL MASTER FUND, L.P., HASTINGS MASTER FUND, L.P., and ARCHER CROSSBOW MASTER FUND, L.P., | : : : : |
| Plaintiffs, | : **COMPLAINT AND JURY** |
| | : **DEMAND** |
| v. | : |
| | : |
| AMERICAN REALTY CAPITAL PROPERTIES, INC. n/k/a VEREIT, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN S. BLOCK, LISA P. MCALISTER, PETER M. BUDKO, LISA E. BEESON, BRIAN D. JONES, EDWARD M. WEIL, JR., WILLIAM M. KAHANE, LESLIE D. MICHELSON, EDWARD G. RENDELL, and SCOTT J. BOWMAN, | : : : : : : : : : |
| Defendants. | : |

------------------------------------------------------------------x

Plaintiffs Archer Capital Master Fund, L.P., Hastings Master Fund, L.P., and Archer Crossbow Master Fund, L.P. (collectively, "Plaintiffs") are investors in the common stock of American Realty Capital Properties, Inc. n/k/a VEREIT, Inc. ("ARCP," or the "Company"). Plaintiffs, through their undersigned attorneys, by way of this Complaint and Jury Demand, for their federal securities and common law claims against ARCP and its former directors and officers Nicholas S. Schorsch, David S. Kay, Brian S. Block, Lisa P. McAlister, Peter M. Budko, Lisa E. Beeson, Brian D. Jones, Edward M. Weil, Jr., William M. Kahane, Leslie D. Michelson, Edward G. Rendell, and Scott J. Bowman (the "Individual Defendants," and, collectively with ARCP, "Defendants"), allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters.

Plaintiffs' information and belief is based on, *inter alia*, an investigation by their attorneys, which investigation includes, among other things, a review and analysis of: ARCP's filings with the United States Securities and Exchange Commission ("SEC"); public documents and media reports concerning ARCP; and a verified complaint filed by Defendant McAlister in the Supreme Court of the State of New York on or about December 18, 2014. Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their custody and/or control. Plaintiffs believe that further substantial evidentiary support will exist for the allegations in this Complaint after a reasonable opportunity for discovery.

### SUMMARY OF CLAIMS

1.      Plaintiffs are investment funds who acquired ARCP common stock when ARCP acquired Cole Real Estate Investments, Inc. ("Cole") in February 2014, and/or purchased ARCP common stock in 2014. They bring this action under the federal securities laws and under the common law to recover the investment losses they suffered as a result of numerous false and misleading statements in ARCP's public filings with the SEC. Specifically, Plaintiffs pursue remedies under Section 11 of the Securities Act of 1933 (the "Securities Act"), Sections 10(b), 18 and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and under state common law.

### JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Section 11 of the Securities Act, 15 U.S.C. §§ 77k; Sections 10(b), 18 and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78r and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and under state common law.

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v; Section 27 of the Exchange Act, 15 U.S.C. §

78aa; 28 U.S.C. § 1331; and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act, and 28 U.S.C. § 1391.  Many of the acts giving rise to the violations complained of herein, including the dissemination of false and misleading information, occurred and had their primary effects in this District.

5.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of a national securities exchange and market.

## PARTIES

### A.     Plaintiffs

6.     Plaintiff Archer Capital Master Fund, L.P. ("Archer Fund") acquired shares of ARCP common stock in the Cole Merger on or about February 7, 2014.  Archer Fund also purchased common stock of ARCP on the dates attached hereto as Exhibit A.

7.  Plaintiff Hastings Master Fund, L.P. ("Hastings Fund") acquired ARCP common stock in the Cole Merger on or about February 7, 2014.  Hastings Fund also purchased common stock of ARCP on the dates attached hereto as Exhibit B.

8.     Plaintiff Archer Crossbow Master Fund, L.P. ("Crossbow Fund") purchased common stock of ARCP on the dates attached hereto as Exhibit C.

9.     Each of Plaintiffs' purchases and acquisitions of ARCP common stock was made through Archer Capital Management ("Archer").  Archer serves as investment manager to each of the Plaintiffs.  Archer's principal office is in New York, New York.

B.    **Defendants**

10.    Defendant ARCP is a Maryland corporation that classifies itself as a REIT for federal tax purposes.   During the relevant time period, its offices were located at 405 Park Avenue, New York, NY 10022.   ARCP closed its initial public offering on September 7, 2011, and from then until on or about July 31, 2015, its common stock traded on the NASDAQ Stock Market under the symbol "ARCP."   In July 2015, ARCP changed its name to "VEREIT, Inc.," and began trading on the New York Stock Exchange under the ticker symbol "VER."

11.    Defendant Nicholas S. Schorsch founded ARCP in 2010.   He served as its Chief Executive Officer ("CEO") until on or about September 30, 2014.   Schorsch served as the Chairman of ARCP's Board of Directors from the Company's inception until on or about December 15, 2014.   As Chairman and CEO of ARCP, Schorsch signed:  (a) ARCP's false and misleading annual report on Form 10-K for the year ended December 31, 2013 (the "2013 Annual Report"), as well as a certification for that report pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"); (b) ARCP's false and misleading quarterly report filed on Form 10-Q for the quarter ended March 31, 2014 (the "2014 First Quarter Report"), as well as a certification for that report pursuant to SOX; (c) ARCP's false and misleading quarterly report filed on Form 10-Q for the quarter ended June 30, 2014 (the "2014 Second Quarter Report"), as well as a certification for that report pursuant to SOX, and (d) ARCP's false and misleading Registration Statement for the Cole Merger that was declared effective on December 23, 2013 (the "Cole Merger Registration Statement").

12.    Defendant David S. Kay joined ARCP as President on or around December 16, 2013.   He was later appointed as CEO on or around October 1, 2014, but stepped down soon thereafter, on or about December 15, 2014.   As President of ARCP, Kay signed: (a) ARCP's

false and misleading 2013 Annual Report, and (b) the false and misleading Cole Merger Registration Statement.

13. Defendant Brian S. Block acted as Chief Financial Officer ("CFO") of ARCP since its inception. His employment with ARCP was terminated on or about October 28, 2014. As CFO of ARCP, Block signed: (a) the false and misleading 2013 Annual Report, as well as a certification for that report pursuant to SOX; (b) the false and misleading 2014 First Quarter Report, as well as a certification for that report pursuant to SOX; (c) the false and misleading 2014 Second Quarter Report, as well as a certification for that report pursuant to SOX; and (d) the false and misleading Cole Merger Registration Statement.

14. Defendant Lisa A. McAlister joined ARCP on or about November 4, 2013, as Senior Vice President and Chief Accounting Officer ("CAO"). In or around July 2014, McAlister was made Principal Accounting Officer of ARCP. Her employment with ARCP was terminated on or about October 28, 2014, just prior to the Company's disclosure of the improper accounting and subsequent fraudulent concealment. As Senior Vice President and CAO of ARCP, McAlister signed: (a) the false and misleading 2013 Annual Report; and (b) the false and misleading 2014 Second Quarter Report.

15. Defendant Peter M. Budko was ARCP's Executive Vice President and Chief Investment Officer from December 2010 through January 2014. As Executive Vice President and Chief Investment Officer of ARCP, Budko signed the false and misleading Cole Merger Registration Statement.

16. Defendant Lisa E. Beeson became ARCP's COO in November 2013, and its President in October 2014. Beeson left ARCP in December 2014. As COO of ARCP, Beeson signed the false and misleading Cole Merger Registration Statement.

17.     Defendant Brian D. Jones was ARCP's COO from February 2013 until November 2013.    As COO of ARCP, Jones signed the false and misleading Cole Merger Registration Statement.

18.     Defendant Edward M. Weil, Jr. served as ARCP's President, Treasurer and Secretary from its formation until February 2014.    Weil also served on ARCP's Board of Directors from March 2012 through June 2014.   As a director of ARCP, Weil signed the false and misleading Cole Merger Registration Statement.

19.     William M. Kahane was a member of ARCP's Board of Directors from February 2013 until June 2014.   As a director of ARCP, Kahane signed the false and misleading Cole Merger Registration Statement.

20.     Defendant Leslie D. Michelson was a member of ARCP's Board of Directors from October 2012 through April 2015.   As a director of ARCP, Weil signed a power of attorney authorizing Schorsch to sign the false and misleading Cole Merger Registration Statement on his behalf.

21.     Defendant Edward G. Rendell was a member of ARCP's Board of Directors from July 2011 through October 2012, and again from February 2013 through April 2015. As a director of ARCP, Rendell signed a power of attorney authorizing Schorsch to sign the false and misleading Cole Merger Registration Statement on his behalf.

22.     Defendant Scott J. Bowman was a member of ARCP's Board of Directors from February 2013 through September 2014.   As a director of ARCP, Bowman signed a power of attorney authorizing Schorsch to sign the false and misleading Cole Merger Registration Statement on his behalf.

## I.     SECURITIES ACT CLAIMS

23.     With respect to Plaintiffs' claims arising under the Securities Act, Plaintiffs expressly disclaim any allegations that could be construed as alleging fraud or intentional misconduct, as these claims are based solely on strict liability and/or negligence.

### A.     The Cole Merger

24.     In 2013 and 2014, Plaintiffs Archer Fund and Hastings Fund purchased shares of Cole, a publicly-traded Maryland corporation that, like ARCP, acquired and operated commercial real estate investments.

25.     On or about October 23, 2013, ARCP announced that it was acquiring Cole (the "Cole Merger").  Under the terms of the merger agreement, each share of Cole would be converted into either (i) 1.0929 shares of ARCP common stock, or (ii) $13.82 in cash (on up to 20% of Cole's common stock).

26.     ARCP closed its acquisition of Cole on or about February 7, 2014.

27.     In connection with the Cole Merger, Plaintiffs Archer Fund and Hastings Fund acquired ARCP common stock in exchange for the shares of Cole common stock that they had previously purchased.

### B.     ARCP's Representations in Connection with the Cole Merger

28.     The ARCP common stock distributed to Cole shareholders was issued pursuant to a Registration Statement on Form S-4 filed with the United States Securities and Exchange Commission ("SEC") on or about November 5, 2013 ("the Initial S-4"), which was amended on December 9, 2013 ("S-4 Amendment No. 1"), and again on December 20, 2013 ("S-4 Amendment No. 2")).  ARCP filed a Joint Proxy Statement/Prospectus with the SEC on December 23, 2013.  Collectively, these documents formed the Cole Merger Registration Statement, which became effective on December 23, 2013.

29.     The Cole Merger Registration Statement was signed by Defendants Schorsch, Kay, Block, Beeson, Weil, Jones, Budko, Kahane, Bowman, Michelson, and Rendell.

30.     The Initial S-4 incorporated by reference:   (a) ARCP's Annual Report filed on Form 10-K with the SEC on February 28, 2013 for the fiscal year ended December 31, 2012, f(the "2012 Annual Report"); (b) ARCP's Quarterly Report filed on Form 10-Q with the SEC on May 6, 2013 for the quarter ended March 31, 2013 (the "2013 First Quarter Report"); and (c) ARCP's Quarterly Report filed on Form 10-Q with the SEC on August 6, 2013 for the quarter ended June 30, 2013 (the "2013 Second Quarter Report").

31.     Amendment No. 1, Amendment No. 2, and the Joint Proxy Statement/Prospectus incorporated by reference:  (a) the 2012 Annual Report; (b) the 2013 First Quarter Report; (c) the 2013 Second Quarter Report; and (d) ARCP's Quarterly Report filed on Form 10-Q with the SEC on November 7, 2013 for the quarter ended September 30, 2013 (the "2013 Third Quarter Report").

32.     In each of the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report, ARCP purported to: (1) accurately state its adjusted funds from operations ("AFFO"); (2) present its financial results in accordance United States Generally Accepted Accounting Principles ("GAAP"); and (3) represent that its disclosure controls and procedures were effective, its internal controls over financial reporting were effective, and that any material changes to the Company's internal controls over financial reporting had been disclosed.

33.     As CEO and CFO of the Company, in each of the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report,

Schorsch and Block respectively certified as to the effectiveness of ARCP's internal controls over financial reporting and its disclosure controls and procedures.

34.    Schorsch and Block certified as follows for each report:

1.    I have reviewed this . . . Report . . . of American Realty Capital Properties, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure

controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

35.     Defendants' representations concerning AFFO, GAAP-compliant financial statements, and effective internal controls were highly material to investors electing to exchange their Cole shares for ARCP shares.

36.     ARCP purported to calculate AFFO by excluding from net income or net loss gains from the sales of property, depreciation, amortization, impairment write-downs, and other income or expenses that are not fundamental to ARCP's core business.

37.     AFFO was an important metric considered by investors in, among other things, determining the sustainability of ARCP's long-term operating performance and in comparing ARCP's operating performance to other companies that may not, unlike ARCP, have significant merger and acquisition activity.  Indeed, in addition to consistently touting the importance of

AFFO in its public statements and filings, ARCP has admitted that its senior management "considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance."

38.    By purportedly reporting its financial results in accordance with GAAP, ARCP telegraphed to investors that its financial statements could be used to accurately assess and evaluate its business operations and financial condition.

39.    By certifying that it purportedly had effective internal controls over financial reporting and effective disclosure controls and procedures, ARCP informed investors that it had safeguards in place to ensure the accuracy of its financial reporting and to make sure that any material information would be disclosed to the market.

C.    **ARCP's Representations Were Materially False and Misleading**

40.    On March 2, 2015, ARCP filed restated financials with the SEC *admitting* that its statements in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report concerning AFFO, compliance with GAAP, and the effectiveness of its internal controls over financial reporting and its disclosure controls and procedures – all of which the Cole Merger Registration Statement incorporated by reference – were materially false and misleading.

41.    In its accompanying press release dated March 2, 2015, ARCP announced that "AFFO was overstated for 2011, 2012, 2013 (including each fiscal quarter of 2013) and the first two quarters of 2014."

42.    According to ARCP's restated financials, AFFO was overstated as follows:

- In the 2012 Annual Report, taking into account the recasting of the Company's historical financial statements to present the effects of the Company's acquisition of ARCT IV, AFFO for

the year ended December 31, 2012 was overstated by $1.3 million, or 2.8%.

- In the 2013 First Quarter Report, AFFO for the quarter ended March 31, 2013 was overstated by $16.5 million, or 95%.

- In the 2013 Second Quarter Report, AFFO for the six months ended June 30, 2013 was overstated by $14.1 million, or 24%.

- In the 2013 Third Quarter Report, AFFO for the quarter ended September 30, 2013 was overstated by $4.4 million, or 10.4%.

43.    AFFO was overstated for at least two reasons.  First, ARCP had presented AFFO on a net basis but calculated the adjustments to net loss on a gross basis.  ARCP's business is conducted through its operating partnership, ARC Properties Operating Partnership, L.P. (the "Operating Partnership").  ARCP owns a majority interest in, but not 100% of, the Operating Partnership.  During the applicable period, ARCP calculated AFFO on a "net basis."  That is, ARCP calculated its net loss based on ARCP's majority ownership interest in the Operating Partnership (taking the net loss of the Operating Partnership and multiplying it by ARCP's equity interest in the Operating Partnership).  In order to make an "apples-to-apples" comparison when calculating AFFO on a net basis, ARCP also should have multiplied the adjustments to net loss by its equity interest in the Operating Partnership.  However, ARCP did not calculate the adjustments to net loss based on ARCP's equity interest in the Operating Partnership, but instead made the adjustments to net loss on a "gross basis," that is, based on the full results of the Operating Partnership (including non-ARCP interests in the Operating Partnership).  As a result, ARCP added back more adjustments to net loss than it should have in order to properly calculate ARCP's AFFO, which resulted in improperly inflated AFFO.

44.    The second reason that AFFO was overstated was because it committed a host of GAAP errors.  ARCP identified the following GAAP errors in its restated financials:

- In the 2012 Annual Report, the original calculation of the net loss attributable to non-controlling interest holders for the year ended December 31, 2012 excluded expenses that were improperly recorded at the Company level.  Those should have been included in the Company's determination of the net loss attributable to its non-controlling interest holders.

- In the 2013 First Quarter Report:

  o ARCP improperly classified $5.4 million of expenses as "merger-related" for the three months ended March 31, 2013.

  o ARCP improperly capitalized $4.1 million of furniture, fixtures, equipment costs and expensed $1.7 million of costs.

  o $1.0 million of expenses were improperly classified as merger and other non-routine transaction-related expenses that should have been capitalized as deferred financing costs and amortized accordingly.

  o $13.0 million of management fees were improperly classified as merger and other non-routine transaction-related expenses that should have been classified as management fees to affiliates.

  o ARCP should have recorded a controlling interest transfer tax liability totaling $1.1 million upon consummation of the ARCT III Merger.

  o $881,000 in equity-based compensation previously reported on a separate line item should instead have been reported within general and administrative expenses.

  o $0.5 million of expense was incorrectly recorded as operating fees to affiliates.

  o The original calculation of the net loss attributable to non-controlling interest holders for the three months ended March 31, 2013 excluded expenses that were improperly recorded at the Company's level.  Those should have been included in the Company's determination of the net loss attributable to its non-controlling interest holders.

- In the 2013 Second Quarter Report:

o ARCP improperly recorded $13.0 million of management fees as merger and other non-routine transaction related expenses instead of as management fees to affiliates for the six months ended June 30, 2013.

o ARCP improperly capitalized $4.1 million of furniture, fixtures, equipment costs and expensed $1.7 million of costs during the six months ended June 30, 2013.

o ARCP should have recorded a controlling interest transfer tax liability totaling $1.1 million upon consummation of the ARCT III Merger for the six months ended June 30, 2013.

o $1.0 million of costs during the six months ended June 30, 2013 were improperly classified as merger and other non-routine transaction related expenses that should have been capitalized as deferred financing costs and amortized accordingly.

o During the three and six months ended June 30, 2013, ARCP improperly classified $0.4 million and $5.9 million, respectively, as "merger-related" instead of general and administrative expenses.

o $87,000 of merger and other non-routine transaction related expenses were improperly recorded in each of the three and six months ended June 30, 2013.

o $3.5 million and $4.3 million during the three and six months ended June 30, 2013, respectively, in equity-based compensation were improperly reported on a separate line item, within general and administrative expenses.

o $0.5 million of operating fees to affiliates was incorrectly recorded in the six months ended June 30, 2013.

o The original calculation of the net loss attributable to non-controlling interest holders for the six months ended June 30, 2013 excluded expenses that were improperly recorded at the Company level.  These should have been included in the Company's determination of the net loss attributable to its non-controlling interest holders.

• In the 2013 Third Quarter Report:

o ARCP improperly recorded $13.0 million of management fees as merger and other non-routine transaction related

expenses instead of as management fees to affiliates for the nine months ended September 30, 2013.

o  ARCP improperly capitalized $4.1 million of furniture, fixtures, equipment costs and expensed $1.7 million of costs during the nine months ended September 30, 2013.

o  ARCP should have recorded a controlling interest transfer tax liability totaling $1.1 million upon consummation of the ARCT III Merger for the nine months ended September 30, 2013.

o  During the three and nine months ended September 30, 2013, ARCP improperly classified $0.3 million and $6.1 million, respectively, as "merger-related" instead of general and administrative expenses.

o  $1.2 million and $2.2 million of expenses were improperly classified as merger and other transaction related expenses that should have been capitalized as deferred financing costs and amortized accordingly for the three and nine months ended September 30, 2013, respectively.

o  ARCP should have recorded a controlling interest tax liability totaling $1.1 million upon consummation of the mergers with ARCT III.

o  $167,000 and $254,000 of merger and other non-routine transaction related expenses were recorded in the incorrect period.

o  $0.5 million of operating fees to affiliates were incorrectly recorded in the nine months ended September 30, 2013.

o  ARCP improperly reported $7.2 million and $11.5 million during the three and nine months ended September 30, 2013, respectively, in equity-based compensation in its own line item.

o  ARCP failed to recognize an impairment of $2.1 million on certain properties for the three and nine months ended September 30, 2013.

o  The original calculation of the net loss attributable to non-controlling interest holders for the three and nine months ended September 30, 2013 excluded expenses that were improperly recorded at the Company level.  These should

have been included in the Company's determination of the
net loss attributable to its non-controlling interest holders.

45.    The statements in the 2012 Annual Report, the 2013 First Quarter Report, the

2013 Second Quarter Report, and the 2013 Third Quarter Report concerning the effectiveness of

ARCP's internal controls over financial reporting and its disclosure controls and procedures, and

the certifications by Schorsch and Block concerning those internal controls, were also false and

misleading.  According to ARCP's Amended Annual Report for 2013, filed on Form 10-K/A on

March 2, 2015:

**Evaluation of Disclosure Controls and Procedures**

The Company's Annual Report on Form 10-K for the fiscal
year ended December 31, 2013 filed with the SEC on February 27,
2014 disclosed that the Company's former management, with the
participation of its former Chief Executive Officer and former
Chief Financial Officer, had evaluated the Company's disclosure
controls and procedures (as defined in Rule 13a-15(e) or 15d-15(e)
under the Exchange Act) and, based on that evaluation, had
concluded that the Company's disclosure controls and procedures
were effective as of December 31, 2013.  In light of the findings of
the Audit Committee investigation and a review made by the
Company in connection with the preparation of the restatement
presented in this Form 10-K/A, current management, under the
supervision of our current Interim Chief Executive Officer and our
current Chief Financial Officer, re-evaluated the Company's
disclosure controls and procedures and, based on that evaluation,
concluded that the Company's disclosure controls and procedures
were not effective at December 31, 2013 . . . .

**Management's Report on Internal Control over Financial
Reporting**

The Company's Annual Report on Form 10-K for the fiscal
year ended December 31, 2013 filed with the SEC on February 27,
2014 disclosed that the Company's former management had
assessed the Company's internal control over financial reporting
(excluding that relating to CapLease, Inc., which the Company
acquired on November 5, 2013) under the criteria set forth by the
Committee of Sponsoring Organizations of the Treadway
Commission in the 1992 Internal Control-Integrated Framework
(the "COSO Framework"), and believed that the Company's

internal control over financial reporting (as defined in Rule 13a-15(f) or 15d-15(f) under the Exchange Act) was effective as of December 31, 2013. In light of the findings of the Audit Committee investigation and a review made by the Company in connection with preparation of the restatement presented in this Form 10-K/A, current management performed a re-assessment of the Company's internal control over financial reporting under the COSO Framework (excluding both CapLease, Inc. and ARCT IV, the latter of which the Company acquired on January 3, 2014 in a transaction accounted for on a carryover basis of accounting and recast in the Company's historical financial statements) and concluded that the Company's internal control over financial reporting was not effective as of December 31, 2013 . . . .

46.     The majority of the findings of the audit committee with respect to ARCP's lack of effective internal controls over financial reporting and disclosure controls and procedures as of December 31, 2013, apply equally to the statements in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report concerning the effectiveness of ARCP's internal controls over financial reporting and its disclosure controls and procedures.

47.     Among other things, the audit committee found that ARCP's disclosure controls and procedures had material weaknesses that allowed the information in its SEC filings to differ from its accounting records, gave senior management insufficient time to review SEC filings, did not require that changes to numbers already approved by the audit committee be brought to the audit committee's attention, and allowed AFFO to be improperly formulated.

48.     The audit committee also found that ARCP's internal controls over financial reporting had material weaknesses concerning related party transactions and conflicts of interest. Furthermore, the audit committee identified significant deficiencies in ARCP's accounting close process and concerning critical accounting estimates and non-routine transactions, which, when aggregated, constituted a material weakness in ARCP's internal controls over financial reporting.

49.     These material weaknesses render Defendants' statements concerning the effectiveness of ARCP's internal controls over financial reporting and its disclosure controls and procedures in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report materially misleading.

## FIRST CAUSE OF ACTION

### Violations of Section 11 of the Securities Act
### By Plaintiffs Archer Fund and Hastings Fund
### Against Defendants ARCP, Schorsch, Kay, Block, Beeson, Weil, Jones, Budko, Kahane, Bowman, Michelson, and Rendell

50.     Plaintiffs Archer Fund and Hastings Fund repeat and reallege the allegations above as if set forth fully herein.

51.     This Cause of Action is asserted against Defendants ARCP, Schorsch, Kay, Block, Beeson, Weil, Jones, Budko, Kahane, Bowman, Michelson, and Rendell under Section 11 of the Securities Act, 15 U.S.C. § 77k.

52.     The Cole Merger Registration Statement and the documents incorporated therein by reference contained false statements of material fact and/or omitted material facts that were required to be disclosed or necessary to make the statements therein not misleading.

53.     ARCP was the issuer and registrant of the shares offered to shareholders of Cole common stock as consideration for the Cole Merger.

54.     Defendants Schorsch, Kay, Block, Beeson, Weil, Jones, Budko, Kahane, Bowman, Michelson, and Rendell signed the Cole Merger Registration Statement.

55.     Plaintiffs Archer Fund and Hastings Fund acquired ARCP common stock in the Cole Merger traceable to the Cole Merger Registration Statement.

56.     Plaintiffs did not know, nor in the exercise of reasonable diligence could they have known, of the untrue statements of material fact or omissions of material facts in the Cole

Merger Registration Statement and the documents incorporated therein when they acquired ARCP common stock in the Cole Merger.

57.     The value of the ARCP common stock issued in connection with the Cole Merger has declined substantially subsequent to the consummation of the Cole Merger, and Plaintiffs Archer Fund and Hastings Fund have sustained damages.

58.     This claim does not sound in fraud.  For purposes of asserting this claim under the Securities Act, Plaintiffs do not allege that Defendants acted with scienter or fraudulent intent.

59.     By reason of the foregoing, Defendants ARCP, Schorsch, Kay, Block, Beeson, Weil, Jones, Budko, Kahane, Bowman, Michelson, and Rendell are liable for violations of Section 11 of the Securities Act.

60.     Taking into account, *inter alia,* tolling of the limitations period by the filing of the class action complaint against Defendants in the matter *In American Realty Capital Properties, Inc. Litigation*, No. 1:15-mc-00040-AKH (S.D.N.Y.), Plaintiffs have brought this claim within one year of discovery of the violations alleged herein, and within three years of ARCP common stock being bona fide offered to the holders of Cole common stock.  Consequently, this action is timely.

## II.    EXCHANGE ACT AND COMMON LAW CLAIMS

### OVERVIEW

61.    ARCP is a publicly traded real estate investment trust ("REIT") that purchases and owns commercial properties.  It generates income from the rent that it receives from the commercial tenants who lease ARCP's properties.  ARCP leases its properties to large, well-established companies, such as Red Lobster, Walgreens, CVS, and FedEx.

62.    One of the most important metrics that investors use when valuing ARCP's stock is "adjusted funds from operations," or "AFFO."  Generally speaking, AFFO quantifies the cash flows that ARCP receives from the leasing of its properties to commercial tenants by removing from ARCP's net income or loss any gains incurred and losses suffered by ARCP that are not related to the actual leasing of the properties, such as ARCP's acquisition expenses.  In its public statements to investors, ARCP repeatedly touted AFFO as a material metric that investors should use in determining the sustainability of ARCP's long-term operating performance and for comparing ARCP's operating performance to other companies.

63.    Unbeknownst to the public, in its annual reports for the years 2012 and 2013, and in its quarterly reports for the first three quarters of 2013, ARCP materially overstated its AFFO due to its conflation of different accounting methods for computing AFFO and significant errors in its expense accounting.  Thus, ARCP gave the market false information about the sustainability of its long-term operating performance and its operating performance in comparison to other companies, and misrepresented that its condition and performance were materially better than they actually were between December 31, 2012 and December 31, 2013.

64.    Defendant McAlister (ARCP's then-Chief Accounting Officer), Defendant Block (ARCP's then-Chief Financial Officer), and Defendant Kay (ARCP's then-President) learned

about the improper accounting with respect to AFFO in ARCP's 2013 annual report in early 2014.  However, none of those individuals corrected the false financial information.  To the contrary, Kay expressly instructed Block and McAlister not to disclose the improper accounting to others.

65.      In its first quarter report of 2014, ARCP elected to compound, rather than remedy, this improper accounting.  ARCP repeated the improper accounting with respect to AFFO in the 2014 first quarter report, this time at the direction of Kay and Defendant Schorsch (ARCP's then-Chairman and CEO).

66.      On or about July 28, 2014, Schorsch instructed Block to switch to a single accounting method for calculating AFFO, but to conceal from investors the conflation of accounting methods in the previously filed 2013 annual report and 2014 first quarter report when filing the 2014 second quarter report.  To accomplish this fraudulent concealment, Schorsch essentially told Block to "cook the books" for the second quarter.  Block's improper changes to ARCP's financials had the effect of overstating ARCP's AFFO and understating ARCP's net loss that were reported in the Form 10-Q for the second quarter.  Despite this clear accounting fraud, Schorsch, Block, and McAlister all signed the Form 10-Q for the second quarter, and Schorsch and Block both signed false certifications as to the accuracy of the financial information contained in the Form 10-Q and the adequacy of ARCP's internal accounting controls.

67.      On or about September 7, 2014, the improper AFFO accounting, as well as the fraudulent concealment of that improper accounting, were brought to the attention of ARCP's audit committee by a corporate whistleblower.  The audit committee hired counsel and a forensic accounting team to assist it in conducting an investigation.

68.     On or about October 29, 2014, ARCP publicly disclosed the preliminary results of the audit committee's investigation.  In a Form 8-K filed with the SEC, ARCP disclosed the improper and fraudulent accounting, and stated that its annual report for the year ended December 31, 2013, as well as the first and second quarter reports for 2014, should no longer be relied upon by the investing public.  ARCP further announced that the audit committee had requested that Block and McAlister resign from their positions at ARCP because it had identified those individuals as responsible for the improper accounting.  Finally, the Company disclosed that it was reevaluating its internal control over financial reporting and its disclosure controls and procedures.

69.     As a result of this disclosure, ARCP's stock price began to plummet.  On October 28, 2014, prior to the public disclosure, ARCP's common stock closed at a price of $12.38 per share.  On October 29, 2014, in reaction to the disclosure, ARCP's common stock traded as low as $7.85 per share.

70.     The disclosure on October 29, 2014 did not reveal the full extent of ARCP's conduct because it failed to disclose Kay's and Schorsch's participation.  A few weeks later, however, on or about December 15, 2014, ARCP issued press releases announcing that Schorsch had "stepped down" from his position with the Company and that ARCP was "unwinding all of its relationships with entities in which Mr. Schorsch maintains an executive or director-level role or is a significant stockholder."  Furthermore, ARCP announced that Kay and Lisa Beeson (at that time, ARCP's President and Chief Operating Officer) were also "stepping down."  Upon the release of this news, ARCP's stock price again tumbled.

71.     Three days later, McAlister filed a lawsuit against ARCP, Schorsch, and Kay, alleging defamation in connection with the termination of her employment.   McAlister filed a

sworn pleading detailing the involvement of Schorsch, Kay, and Block, as well as her own involvement, in the improper and fraudulent accounting at ARCP with respect to the 2014 quarterly reports.  She also disclosed that Kay, Block, and she had learned of the misrepresentations in ARCP's 2013 annual report but had taken no action to correct the misrepresentations.  This disclosure caused a further decline in ARCP's stock price.

72.     Several government agencies, including the United States Attorney's Office in Manhattan and the SEC, commenced investigations against ARCP based on these disclosures.

73.     On March 2, 2015, the audit committee publicly announced the final results of its investigation.  The audit committee confirmed that ARCP had overstated AFFO in 2012 and 2013, that the 2013 overstatement had come to the attention of senior management prior to the release of the first quarter results in 2014, that senior management intentionally failed to correct the 2013 reported AFFO or prevent AFFO from being overstated again in the 2014 first quarter report, and that senior management had intentionally cooked ARCP's books in the 2014 second quarter report in order to cover up the prior AFFO misrepresentations.

74.     In its final report, the audit committee detailed the many errors and deep wrongdoing at ARCP.  ARCP had committed a host of accounting errors and misrepresentations in its financial statements, including serious and repeated misapplications of GAAP accounting, which caused net loss to be materially understated for 2013 and contributed to the overstatement of AFFO in 2012, 2013 and 2014.  These misrepresentations included the repeated improper accounting for its non-controlling interests, the repeated mischaracterization of clear general and administrative expenses as merger and other non-routine transaction related expenses, and even the outright exclusion of selected expenses in their entirety.  Not only had ARCP inflated the actual financial metrics on which management was, in part, to be compensated, but Schorsch and

Block had also been granted more equity awards than ARCP's compensation committee had authorized. Moreover, Schorsch had caused ARCP to pay millions of dollars to fund the renovation of an historic building in Newport, Rhode Island that was owned by his real estate partnership and that ARCP did not utilize for its own operations. Finally, the audit committee identified pervasive material weaknesses in ARCP's internal controls over financial reporting as well as in its disclosure controls and procedures.

75.     As a result of the audit committee's findings, ARCP restated its financial results for 2012, 2013 and for the first half of 2014.

76.     The improper and fraudulent accounting and the complete lack of effective internal controls at ARCP stands in stark contrast to the representations that ARCP was contemporaneously conveying to the market.

77.     On or about October 23, 2013, ARCP announced that it was acquiring Cole. Under the terms of the merger agreement, shareholder of Cole had the opportunity to convert their Cole common stock into shares of ARCP common stock.

78.     In connection with the Cole Merger, ARCP made several announcements to assure Cole stockholders and other investors that ARCP was an independently managed company of the highest integrity with superior corporate governance and strong internal controls.

79.     ARCP also touted the purported strength of ARCP's new management team, increased investor transparency, and ARCP's improved corporate governance and internal controls.

80.     At the ARCP investor day held on September 17, 2014, Block stood before a full auditorium and confidently made a representation about the purported accuracy of ARCP's financial results, which was webcast to the investment community on www.arcpreit.com.

81.     These statements were materially false, deliberately misleading, and had both the intent and effect of giving the investment community conviction in the accuracy of ARCP's financial statements, which in turn supported ARCP's share price.  Schorsch, Kay, Block and McAlister all knew that ARCP's published financial results were materially misleading, and that ARCP lacked effective internal controls to protect the investing public from the fraud that they had perpetrated.

82.     In making their decisions to invest in ARCP's common stock in 2014, Plaintiffs read, reviewed, listened to, and relied on Defendants' materially misleading statements.  The effect of Defendants' repeated material misstatements and omissions was to give Plaintiffs a materially false account of the Company's financial health as well as of the effectiveness of its internal controls.  Had it not been for these repeated material misrepresentations, Plaintiffs either would not have purchased/acquired ARCP common stock or would not have paid the prices they paid.

83.     As a result of the disclosure of the improper accounting and the subsequent fraudulent concealment, Plaintiffs have suffered millions of dollars of losses.

## FACTUAL ALLEGATIONS

### A.     Schorsch's REIT Empire and ARCP

84.     According to the *Wall Street Journal*, Nicholas Schorsch is one of the country's top "real-estate power brokers."  Schorsch entered the commercial real estate market in 1998 when he purchased 105 First Union Bank branch locations set to be closed down due to First Union's acquisition of CoreStates Financial.  Schorsch acquired these branch locations for $22.3 million, and then generated income from them by leasing the properties to other banks.  In 2002, Schorsch rolled his bank properties into a REIT named American Financial Realty Trust, which went public in 2003.  In 2006, Schorsch left American Financial Realty Trust and moved into the

nontraded commercial REIT and advisory market.  Schorsch founded the triple net lease REIT American Realty Capital Trust (ARCT) in 2007, publicly listed the company in 2012, and sold the company in 2013 to Realty Income – the industry leader in publicly traded triple net lease REITs – for $1.9 billion in stock.  According to *Forbes*, by 2014 Schorsch was Chairman and/or CEO of over a dozen real-estate and alternative-investing companies, and had an estimated net worth of $1.5 billion.

85.     One of the companies of which Schorsch became the Chairman and CEO was ARCP.  Schorsch founded ARCP in 2010 and took it public in 2011.  ARCP is a real estate company that purchases, owns, and operates commercial properties.  The properties that ARCP acquires are single-tenant, free-standing, and primarily subject to net leases.  Generally speaking, net leases are leases where the tenant pays the expenses that are traditionally borne by the landlord, such as building maintenance expenses, property taxes, and insurance.  ARCP distributes the rent it receives from its properties, less certain fees, to its shareholders in the form of dividends.

86.     As of September 2014, ARCP's top ten tenants were Red Lobster, Walgreens, CVS, Dollar General, FedEx, Family Dollar, GSA, Albertson's, Citizens Bank, and AT&T.

87.     Substantially all of ARCP's business is conducted through its operating partnership, ARC Properties Operating Partnership, L.P. (the "Operating Partnership").  As of December 31, 2013, ARCP held approximately 96% of the equity interests of the Operating Partnership.

**B.** **The Importance of AFFO as a Measure of ARCP's Operating Performance**

88.     As a public company, ARCP is required to report its financial results in accordance with United States Generally Accepted Accounting Principles.  GAAP requires a business to report, among other things, its net income or loss in its financial statements.

89.     In addition to results from operations, net income or loss under GAAP reflects certain financing methods and the capital structure of the reporting company.  To provide investors with a better understanding of its operating performance, therefore, in addition to reporting its net income or loss ARCP also reports funds from operations ("FFO") and adjusted funds from operations ("AFFO").

90.     According to ARCP's 2013 Annual Report as originally filed on February 27, 2014, FFO is defined by the National Association of Real Estate Investment Trusts, Inc. as "net income or loss computed in accordance with GAAP, excluding gains or losses from sales of property but including asset impairment writedowns, plus depreciation and amortization, after adjustments for unconsolidated partnerships and joint ventures."  Thus FFO is designed to exclude from net income or loss "such factors as depreciation and amortization of real estate assets and gains or losses from sales of operating real estate assets."

91.     ARCP calculates AFFO by making additional adjustments to FFO to exclude "merger related costs, acquisition-related fees and expenses and other non cash charges" to provide investors more clarity about the Company's operating performance.

92.     ARCP reported AFFO in its quarterly and year-end publicly filed financial statements.  Each of ARCP's Form 10-Ks and Form 10-Qs filed with the SEC during the relevant time period included a table setting forth the items deducted or added to net loss to calculate ARCP's FFO and AFFO.

93.    In its 2013 Annual Report as originally filed on February 27, 2014, ARCP described that AFFO was important because removing from FFO merger costs, transaction costs, and costs relating to investment activities allows investors to evaluate the sustainability of ARCP's long-term operating performance and to compare ARCP's operating performance to other companies:

> Changes in the accounting and reporting promulgations under GAAP (for acquisition fees and expenses from a capitalization/depreciation model to an expensed-as-incurred model) that were put into effect in 2009 and other changes to GAAP accounting for real estate subsequent to the establishment of NAREIT's definition of FFO have prompted an increase in cash-settled expenses, specifically acquisition fees and expenses for all industries as items that are expensed under GAAP, that are typically accounted for as operating expenses. Management believes these fees and expenses do not affect our overall long-term operating performance. While certain companies may experience significant acquisition activity, other companies may not have significant acquisition activity and **management believes that excluding costs such as merger and transaction costs and acquisition related costs from property operating results provides useful information to investors and provides information that improves the comparability of operating results with other companies** who do not have significant merger or acquisition activities. AFFO is not equivalent to our net income or loss as determined under GAAP, and AFFO may not be a useful measure of the impact of long-term operating performance if we continue to have such activities in the future.
>
> We exclude certain income or expense items from AFFO that we consider more reflective of investing activities, other non-cash income and expense items and the income and expense effects of other activities that are not a fundamental attribute of our business plan. These items include unrealized gains and losses, which may not ultimately be realized, such as gains or losses on derivative instruments, gains or losses on contingent valuation rights, gains and losses on investments and early extinguishment of debt. In addition, by excluding non-cash income and expense items such as amortization of above and below market leases, amortization of deferred financing costs, straight-line rent and non-cash equity compensation from AFFO we believe we provide useful information regarding income and expense items which have no cash impact and do not provide us liquidity or require our capital

resources. **By providing AFFO, we believe we are presenting useful information that assists investors and analysts to better assess the sustainability of our ongoing operating performance without the impacts of transactions that are not related to the ongoing profitability of our portfolio of properties. We also believe that AFFO is a recognized measure of sustainable operating performance by the REIT industry. Further, we believe AFFO is useful in comparing the sustainability of our operating performance with the sustainability of the operating performance of other real estate companies that are not as involved in activities which are excluded from our calculation.** Investors are cautioned that AFFO should only be used to assess the sustainability of our operating performance excluding these activities, as it excludes certain costs that have a negative effect on our operating performance during the periods in which these costs are incurred.

In addition, we exclude certain interest expenses related to securities that are convertible to common stock as the shares are assumed to have converted to common stock in our calculation of weighted average common shares-fully diluted. As the Company's convertible notes have a cash or stock settlement option and the Company has the ability and intent to settle its convertible notes in cash, the interest expense related to our convertible notes have not been excluded from AFFO, and accordingly, the shares are not assumed to have converted to common stock in our calculation of weighted average common shares-fully diluted.

In calculating AFFO, we exclude expenses, which under GAAP are characterized as operating expenses in determining operating net income. These expenses are paid in cash by us, and therefore such funds will not be available to distribute to investors. All paid and accrued merger and acquisition fees and certain other expenses negatively impact our operating performance during the period in which expenses are incurred or properties are acquired and will have negative effects on returns to investors, the potential for future distributions, and cash flows generated by us, unless earnings from operations or net sales proceeds from the disposition of other properties are generated to cover the purchase price of the property and certain other expenses. Therefore, AFFO may not be an accurate indicator of our operating performance, especially during periods in which mergers are being consummated or properties are being acquired or certain other expenses are being incurred. AFFO that excludes such costs and expenses would only be comparable to companies that did not have such activities. Further, under GAAP, certain contemplated non-cash fair value and other non-cash adjustments are considered operating non-cash

adjustments to net income in determining cash flow from operating activities. In addition, we view fair value adjustments as items which are unrealized and may not ultimately be realized. We view both gains and losses from fair value adjustments as items which are not reflective of ongoing operations and are therefore typically adjusted for when assessing operating performance. Excluding income and expense items detailed above from our calculation of AFFO provides information consistent with management's analysis of the operating performance of the properties. Additionally, fair value adjustments, which are based on the impact of current market fluctuations and underlying assessments of general market conditions, but can also result from operational factors such as rental and occupancy rates, may not be directly related or attributable to our current operating performance. By excluding such changes that may reflect anticipated and unrealized gains or losses, we believe AFFO provides useful supplemental information.

(Emphasis added).

94.     Thus, ARCP represented to investors that AFFO was an important metric that should be considered in determining the sustainability of ARCP's long-term operating performance and in comparing ARCP's operating performance to other companies that may not, unlike ARCP, have significant merger and acquisition activity.

95.     With the release of its financial results at the end of each quarter, ARCP also issued a "Quarterly Supplement" and an investor presentation in which ARCP provided "guidance" to the public based on AFFO per share.  For example, in connection with the announcement of its financial results for the second quarter of 2014, ARCP used its reported AFFO for the second quarter to determine a "run rate" AFFO for the second half of 2014. Adding this "run rate AFFO" to its reported AFFO for the first half of the year, ARCP publicly stated that its pro forma AFFO per share for 2014 was $1.14, which was supposedly in line with the guidance of $1.13 to $1.19 that ARCP had provided at the beginning of the year with respect to AFFO per share for 2014.

96.     ARCP thus not only showcased AFFO as a number investors should use to assess the sustainability of ARCP's long-term operating performance and in comparing ARCP's operating performance to other companies, but also as a metric for valuing the Company.

97.     ARCP made numerous references to AFFO in the press releases accompanying the disclosure of its financial results, often including "increased AFFO" as one of the "highlights" of such results.

98.     Moreover, when commenting on the financial results in those press releases, ARCP's executives frequently touted AFFO.  For example:

- "With strong AFFO per share growth, an attractive property portfolio, strong credit tenants bounded by long-term net leases and an attractively positioned balance sheet, we believe ARCP has the catalysts to provide long-term shareholder returns." (Feb. 27, 2014 ARCP Press Release (quoting Defendant Block).)

- "We had a record quarter with earnings coming exactly in line with our expectations of $0.26 AFFO per share, consistent with our previously stated guidance for the year."  (May 8, 2014 ARCP Press Release (quoting Defendant Schorsch).)

- "The daily execution of these collective actions allows us to maintain our 2014 AFFO per share guidance of $1.13 - $1.19, while significantly de-levering the balance sheet and maximizing value for our stockholders."  (July 29, 2014 ARCP Press Release (quoting Defendant Kay).)

99.     ARCP thus presented AFFO as a cornerstone of its financial results.

100.    Indeed, ARCP management was keenly aware of the importance of AFFO.  In a press release dated March 2, 2015, ARCP's audit committee plainly stated:  "Senior management considered AFFO to be an ***important metric used by analysts and investors in evaluating the Company's performance*** and, for the first two quarters of 2014, sought to maintain reported AFFO within the range of $1.13 to $1.19 per share announced at the end of 2013." (Emphasis added).

C.     **Schorsch Attempts to Build Investor Confidence in ARCP by Launching his "Self-Management" Initiative**

101.    Schorsch's strategy with respect to ARCP was one of rapid growth through acquisition.  According to the *Wall Street Journal*, between 2012 and 2013, ARCP's assets rose nearly 100-fold, from approximately $220 million to $20.5 billion. In September 2014, ARCP told investors that it owned and managed approximately $30 billion of assets.

102.    According to the *Wall Street Journal*, Schorsch's rapid-growth-through-acquisition strategy led to concerns among certain of ARCP's investors.  Specifically, questions were raised about the growth strategy because some of the acquisitions involved Schorsch's other companies, which led to multi-million dollar fees being paid to advisory companies controlled by Schorsch.  Others criticized Schorsch for overpaying for assets by trying to acquire too much too quickly.

103.    ARCP's corporate governance was also questioned by investors.  Under the Maryland Unsolicited Takeover Act ("MUTA"), ARCP reserved the right to unilaterally stagger its board of directors and deny shareholders the ability to elect the entire Board of Directors at each annual meeting.

104.    Schorsch attempted to assuage some of these concerns in 2013 by initiating a campaign to make ARCP "self-managed" (as opposed to being managed by ARC Properties Advisors, LLC, a firm controlled by Schorsch).

105.    Between October 2013 and February 2014, Schorsch brought several senior executives on board.  Among others, he hired Lisa Beeson as Chief Operating Officer, David Kay as President, and Lisa McAlister as Chief Accounting Officer.  However, Schorsch retained the position of Chairman and CEO for himself, and kept his longtime friend and colleague, Brian

Block, in the position of CFO.  Block had been working as a senior financial/accounting executive for Schorsch since Schorsch launched American Financial Realty Trust.

106.    In early 2014, ARCP set about issuing a series of memos to shareholders and holding shareholder meetings to, among other things, emphasize ARCP's purported focus on corporate governance, shareholder transparency, and the adequacy of its internal controls. ARCP issued these stockholder memoranda on or about June 20, July 8, July 28, and September 10, 2014.

107.    In the June 20, 2014 stockholder memorandum, Schorsch announced that he would be transitioning his CEO role to Kay on October 1, 2014.  Because investors viewed Schorsch as the driving force behind ARCP's rapid growth, this move was viewed as a long-awaited stabilizing development for ARCP.

108.    In the July 28, 2014 stockholder memorandum, Schorsch announced that the Company's directors would be adopting a resolution to give ARCP's shareholders the ability to elect the entire Board of Directors at each annual meeting, rather than permitting the directors to classify the Board under MUTA.  Thus, shareholders would have the ability to make changes to the entire Board if they viewed the Company as heading in the wrong direction.

109.    On July 29, 2014, ARCP released its financial results for the second quarter of 2014.  During the earnings call announcing these results, Kay touted the strength of ARCP's operations over the prior quarters and the "transparency" of its second quarter results:  "As with any large company there will [be] challenges as well as opportunities but the foundation laid over the past several quarters position [*sic*] the company for the future success. . . .  We hope you can appreciate the transparency provided this quarter and we continue to focus on supplying the most meaningful information to you about the Company and our guidance."

110.    On that same call, Block made statements about the purported strengthening of ARCP's internal operations with respect to financial reporting:   "[O]ur internal operations continues [*sic*] to strengthen.   The synergy created by the innovation of the Cole team and the adoption of new technology has allowed to be [*sic*] more timing efficient in our financial reporting.   In fact, this enhanced scale allowed us to move up the timing of our 10-Q filing and earnings call as a result of these improvements by roughly a week."

**E.      ARCP Executives Hold an "Investor Day," Vouching for the Integrity and Accuracy of ARCP's Reported Financial Results**

111.    On or about September 17, 2014, ARCP held an "Investor Day" designed, per a press release dated September 9, 2014, to "provide investors [with] an opportunity to hear from the Company's management team regarding the Company's business and its focus on value creation."

112.    At the Investor Day, Schorsch and the other ARCP senior executives repeatedly emphasized to investors the purported strength of the new management team, ARCP's increased investor transparency, and the Company's improved corporate governance and internal controls.

113.    During the Investor Day, Block was asked about certain reporting blunders by ARCP in May 2014.   Block blamed the errors on the volume of acquisitions ARCP had recently completed and on him being out "on the road" talking to investors.   He then told investors that since mid-May 2014 he had been working in the office to improve ARCP's finance and accounting department.   Block insinuated to investors that any prior flaws in ARCP's internal controls had been addressed, stating:   "The proof is in the results in terms of . . . the accuracy and transparency of the numbers."   Thus, Block told investors that not only was he standing behind ARCP's recent financial statements, but that the accuracy of those statements demonstrated that the May 2014 blunders were behind the Company.

114.     The message that ARCP's senior executives conveyed at the Investor Day was clear:   ARCP had adequate and effective internal controls with respect to accounting and financial reporting, and its financial statements were accurate and reliable.

**F.     Plaintiffs Acquire and Purchase ARCP Common Stock**

115.     In 2013 and 2014, Plaintiffs Archer Fund and Hastings Fund, through Archer, purchased shares of Cole.

116.     On or about October 23, 2013, ARCP announced that it was acquiring Cole. If consummated, the proposed $11.2 billion merger would create the country's largest net REIT. In connection with the merger announcement, Schorsch commented that "[b]oth companies share the same vision, namely to drive value for stockholders by placing their interest ahead of our own, aligning pay with performance, and *reporting fully and transparently*."  (Emphasis added). Schorsch further described the Cole Merger on a conference call with investors and analysts as an "epic transaction."

117.     Under the terms of the merger agreement, each share of Cole would be converted into either (i) 1.0929 shares of ARCP common stock, or (ii) $13.82 in cash (on up to 20% of Cole's common stock).

118.      In connection with the Cole Merger, Plaintiffs Archer Fund and Hastings Fund acquired ARCP common stock in exchange for the shares of Cole common stock that they had previously purchased.  The ARCP common stock issued in connection with the Cole Merger was registered with the SEC pursuant to the Cole Merger Registration Statement.  The Cole Merger Registration Statement incorporated by reference the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report.

119.     Prior to acquiring ARCP common stock for their Cole common stock, Archer Fund and Hastings Funds, through their investment manager, Archer, actually read, reviewed and

relied on the Cole Merger Registration Statement, the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report, including the statements therein concerning ARCP's AFFO, its compliance with GAAP, and the effectiveness of its internal controls.

120.     Throughout 2014, Plaintiffs, through Archer, purchased additional shares of ARCP common stock.  In doing so, in addition to relying on the documents referenced above, Plaintiffs actually read, reviewed and relied on ARCP's 2013 Annual Report, its 2014 First Quarter Report, and its 2014 Second Quarter Report.

### G.     ARCP Shocks the Market by Disclosing a Massive Accounting Fraud

121.     On or about October 29, 2014, ARCP filed a Form 8-K announcing that its financial statements and other financial information in its 2013 Annual Report, its 2014 First Quarter Report, and its 2014 Second Quarter Report should no longer be relied upon.

122.     ARCP stated that on September 7, 2014, concerns regarding accounting practices and other matters were brought to the attention of ARCP's audit committee.  The audit committee then conducted a preliminary investigation with the assistance of independent counsel and forensic accounting experts.

123.     The audit committee's preliminary investigation found that the AFFO for the first quarter of 2014 had been overstated due to a known "error," and that that "error" had been intentionally concealed in the reported financials for the second quarter of 2014.  The Company stated:

> [B]ased on the preliminary findings of the investigation, the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ("AFFO"), a non-U.S. GAAP financial measure, for the three months ended March 31, 2014 and, as a result, overstated AFFO for this period.  The Audit Committee believes that this error was identified but intentionally not

corrected, and other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014.

124.   The Company also announced that the audit committee had asked Block and McAlister to resign as a result of its findings.

125.   Based, on Block's and McAlister's key roles in the preparation of the 2013 financial statements, the Company warned investors not to rely on those financial statements either.

126.   The Company further announced that it needed to reevaluate its internal controls with respect to financial reporting:   "In light of the preliminary findings of the Audit Committee's investigation, the Company is reevaluating its internal control over financial reporting and its disclosure controls and procedures.   The Company intends to make the necessary changes to its control environment to remediate all control deficiencies that are identified as a result of the ongoing investigation and the restatement process."

127.   Attached to the Form 8-K were adjusted financial results for the first and second quarters of 2014.   The adjusted AFFO from the 2014 First Quarter Report was presented as follows (with amounts in thousands):

| AFFO (Presented on a Net Basis) | Three Months Ended March 31, 2014 |
|---|---|
| AFFO – Originally Reported | $147,389 |
| Preliminary Adjustments | (17,638) |
| AFFO - Adjusted | $129,751 |

The AFFO from the 2014 Second Quarter Report was presented as follows (with amounts in thousands):

| AFFO (Presented on a Gross Basis) | Three Months Ended March 31, 2014 | Three Months Ended June 30, 2014 | Six Months Ended June 30, 2014 |
|---|---|---|---|
| AFFO – Originally Reported | $147,780* | $205,278 | $353,058 |
| Preliminary U.S GAAP Adjustments | - | (9,242) | (9,242) |
| Preliminary Adjustments – AFFO Only | (11,974) | (1,627) | (13,601) |
| AFFO - Adjusted | $135,806 | $194,409 | $330,215 |

*Represents AFFO as reported for the six months ended June 30, 2014 less AFFO as reported for the three months ended June 30, 2014*

128.  Later that day, David Kay hosted an investor conference call to discuss the corporate disclosure.  Kay revealed the following during the call:

- On September 7, 2014, an unidentified ARCP employee contacted the audit committee.

- As a result of this contact, the audit committee retained Weil Gotshal and Ernst & Young to conduct an investigation.

- The audit committee reported the preliminary results of the investigation to non-implicated executives on Friday, October 24, 2014.

- ARCP calculated AFFO for the first quarter of 2014 on a "net basis."  That is, ARCP calculated its net loss based on ARCP's approximately 96.5% equity interest in the Operating Partnership (taking the net loss of the Operating Partnership and multiplying it by approximately 96.5%).  In order to make an "apples-to-apples" comparison when calculating AFFO on a

net basis, ARCP also should have multiplied the adjustments to net loss by approximately 96.5% to reflect ARCP's equity interest in the Operating Partnership. However, ARCP did not calculate the adjustments to net loss based on ARCP's approximately 96.5% equity interest in the Operating Partnership, but instead made the adjustments to net loss on a "gross basis," that is, based on the full results of the Operating Partnership. As a result, ARCP added back more adjustments to net loss than it should have in order to properly calculate ARCP's AFFO, which resulted in an improperly inflated AFFO.

- The accounting "error" in the first quarter financials improperly increased AFFO for the first quarter of 2014 by $17.6 million, artificially inflating AFFO to $0.26 per share when it should have been only $0.23 per share.

- In the second quarter of 2014, ARCP calculated its AFFO on a gross basis rather than on a net basis. When calculating AFFO on a gross basis, net loss and adjustments to net loss are based on the full results of the Operating Partnership (neither net loss nor the adjustments to net loss were multiplied by ARCP's approximately 96.5% interest in the Operating Partnership). This switch to the gross basis would reveal, however, that in the prior quarter ARCP had calculated net loss on a net basis but adjusted the net loss to derive AFFO on a gross basis. To conceal the mistakes from the previous quarter that would have been revealed by calculating AFFO on a gross basis, ARCP decided to improperly move approximately $10.5 million of expenses actually accrued in the second quarter of 2014 to the third quarter of 2014. By so doing, ARCP improperly lowered the net loss for the second quarter of 2014 commensurate with the overstated AFFO for the first quarter of 2014.

129.    In describing the intentional concealment committed with respect to the second quarter results, Kay commented: "The best way I can describe what happened there is that we don't have bad people; we had some bad judgment there."

130.    In describing who was responsible, Kay stated: "[W]e had two employees [Block and McAlister] which [*sic*] have resigned as a result of the effects of that calculation and the nondisclosure of the error in the first quarter. ***None of the executives that are currently at the***

*Company have been implicated during the investigation related to the concealment of the error*." (Emphasis added).

131.    Kay also told investors that he did not personally learn of the improper accounting and fraudulent concealment until October 24, 2014, and that he "100%" expected to stay with the Company.

132.    Following these disclosures, ARCP's stock price lost more than 35% of its value.

### H.    ARCP Fires Schorsch, Kay and Beeson, and McAlister Files a Defamation Lawsuit

133.    Unfortunately for investors, ARCP's and Kay's disclosures on October 29, 2014, failed to reveal the full extent of who had been involved.

134.    On or about December 15, 2014, ARCP filed a Form 8-K announcing that on December 12, 2014, Schorsch had resigned as Chairman of the Company and the Operating Partnership. Furthermore, Schorsch "also [had] resigned from all other employment and board positions that he held at the Company and its subsidiaries and certain Company-related entities (including the non-traded real estate investment trusts sponsored or managed by the Company or its affiliates)."

135.    The Company also announced in that same filing that on December 15, 2014, Kay had resigned as CEO and Beeson had resigned as President and COO of ARCP. The Company appointed its lead independent director, William Stanley, as interim CEO and Chairman.

136.    ARCP's stock again declined precipitously upon the disclosure of this information.

137.    The reason for the sudden departures of Schorsch, Kay and Beeson was revealed in a verified complaint filed by McAlister in the Supreme Court of the State of New York on or about December 18, 2014. In that verified complaint, McAlister asserted claims for defamation

against ARCP, Schorsch and Kay in connection with the announcement of her termination from ARCP.

138.    McAlister signed a sworn verification affirming the truth of her allegations.

139.    According to McAlister, in early 2014, ARCP's Director of External Reporting, Ryan Steel, informed Beeson that in the 2013 Annual Report ARCP had misrepresented AFFO. McAlister brought this misrepresentation to the attention of Block.  Block and McAlister then met with Kay to discuss the misrepresentation.  Kay told McAlister and Block not to change or correct the misstatement.

140.    Kay and Schorsch subsequently specifically directed that the Company continue to use this improper accounting in the 2014 First Quarter Report, resulting in another material overstatement of AFFO.

141.    Then, according to McAlister's sworn pleading, on or around July 28, 2014, the very same day that Schorsch issued a stockholder memorandum titled "Executing On Our Continuing Commitment to Enhance Corporate Governance," Schorsch directed Block during a conference call with Block and McAlister to switch to calculating AFFO on a gross basis and to make fraudulent adjustments to conceal the improper accounting.

142.    In sum, McAlister asserted in a sworn court document that:  (1) Kay, Block and McAlister learned of misstatements in the 2013 Annual Report, but Kay instructed Block and McAlister not to correct them; (2) the improper accounting with respect to AFFO was repeated in the 2014 First Quarter Report at the specific direction of Schorsch and Kay, and thus the 2014 First Quarter Report deliberately misstated AFFO; and (3) in July 2014 Schorsch directed Block to make improper adjustments to ARCP's numbers in the 2014 Second Quarter Report to conceal

the misstatements that had been made in the 2013 Annual Report and the 2014 First Quarter Report.

### I.      ARCP Is Investigated by Several Government Agencies

143.     The disclosure of ARCP's accounting fraud has led to numerous government investigations of ARCP and its management.

144.     On or about November 13, 2014, ARCP received the first of two document subpoenas from the SEC relating to the audit committee's investigation.  The SEC informed ARCP that it had commenced a formal investigation of the Company.

145.     On December 19, 2014, ARCP received a subpoena from the Securities Division of the Commonwealth of Massachusetts.

146.     The U.S. Attorney's Office for the Southern District of New York is also reportedly conducting an investigation of ARCP.

### J.      The Audit Committee Releases the Final Results of Its Investigation and ARCP Files Restated Financial Statements

147.     On March 2, 2015, the audit committee released the final results of its investigation.   Simultaneously therewith, ARCP restated its financial statements by filing amendments to the 2013 Annual Report (the "Amended 2013 Annual Report"), the 2014 First Quarter Report (the "Amended 2014 First Quarter Report"), and the 2014 Second Quarter Report (the "Amended 2014 Second Quarter Report" and, collectively with the Amended 2013 Annual Report and the Amended 2014 First Quarter Report, the "Amended Reports").

148.     In a press release issued on March 2, 2015, ARCP reported that the audit committee had made the following "key" findings:

- ARCP understated net loss for 2013 (including each quarter of 2013) and for the second quarter of 2014, and overstated AFFO for 2011, 2012, 2013 (including each fiscal quarter of 2013) and the first two quarters of 2014.

- ARCP made payments to Schorsch's real estate partnership that were not sufficiently documented and warranted scrutiny. ARCP recovered consideration valued at approximately $8.5 million in respect of such inappropriate payments.

- ARCP made equity awards to Schorsch and Block that were more favorable to Schorsch and Block than approved by ARCP's compensation committee.

- There are numerous material weaknesses in ARCP's internal controls over financial reporting and its disclosure controls and procedures.

### 1.  *Amended 2013 Annual Report's Adjustments to AFFO and Net Loss*

149.    In the Amended 2013 Annual Report, the audit committee confirmed what McAlister had alleged in her verified complaint and what the Company had implied on October 29, 2014:  ARCP had materially misrepresented AFFO in its 2013 Annual Report.

150.    AFFO was overstated in the 2013 Annual Report for three reasons.  First, ARCP had presented AFFO on a net basis but calculated the adjustments to net loss on a gross basis. Second, ARCP had improperly included operating fees incurred to affiliates in calculating AFFO.  Finally, in addition to these methodological errors, ARCP had committed a host of GAAP errors in its 2013 financial statements.

151.    ARCP overstated AFFO in the 2013 Annual Report by $44.0 million, or 18.6%.

152.    Moreover, the GAAP errors identified by the audit committee meant that ARCP had not only overstated AFFO, but it had also understated its net loss in the 2013 Annual Report.

153.    Some of the GAAP errors that the audit committee identified in the 2013 Annual Report included:

- Improperly classifying $75.7 million of expenses as merger and other non-routine transaction-related expenses when they were in fact more appropriately classified as recurring general and administrative expenses.  The largest component of this misclassified amount was $59.6 million of equity-based compensation expense.

- Outright excluding $14.5 million of additional merger and other non-routine transaction-related expenses when these expenses should have been included.

- Mischaracterizing $13.0 million of management fees as merger and other non-routine transaction-related expenses when they were in fact more appropriately classified as management fees to affiliates.

- Recording $5.9 million of expenses as merger and other non-routine transaction-related expenses when they should have been capitalized as deferred financing costs and amortized accordingly.

- Failing to use the carryover basis of accounting for the American Realty Capital Trust IV, Inc. ("ARCT IV") merger that closed in January 2014.  ARCP and ARCT IV were affiliated companies under the common control of AR Capital, LLC during 2013.

- In connection with its merger with American Realty Capital Trust III, Inc. ("ARCT III"), ARCP entered into an agreement to acquire furniture, fixtures, equipment and other assets that it used to capitalize $4.1 million of costs and to expense another $1.7 million of costs in its original 2013 10-K.  However, the audit committee found no evidence of receipt of these materials.

- Failing to record a controlling interest transfer tax liability of $8.9 million resulting from certain mergers.

- Neglecting to realize that two of its properties were impaired and that it might not be able to recover the carrying amounts of those properties, resulting in an incremental impairment loss of $3.3 million.

154.    Taking into account the recasting of the 2013 financials to present the effects of ARCP's acquisition of ARCT IV, net loss attributable to stockholders was understated in the 2013 Annual Report by $16.8 million, or 3.5%.

155.    The audit committee also confirmed in the Amended 2013 Annual Report that ARCP had overstated AFFO for the year ended December 31, 2012.  Specifically, taking into

account the recasting of the Company's historical financial statements to present the effects of the Company's acquisition of ARCT IV, AFFO for the year ended December 31, 2012 was overstated by $1.3 million.

### 2.    Amended 2014 First Quarter Report's Adjustments to AFFO

156.    In ARCP's Amended 2014 First Quarter Report, the audit committee confirmed that Defendants learned of AFFO misrepresentations in early 2014 but failed to correct the overstatements in the 2013 Annual Report or to prevent the AFFO methodology error from being repeated in the 2014 First Quarter Report.   "Some members of senior management," the document states, "were aware of [the AFFO calculation] errors but allowed the [2014 First Quarter Report] to be filed without completing an analysis of the errors."

157.    The audit committee disclosed that ARCP's senior management intentionally overstated AFFO because it wanted to meet the AFFO-per-share guidance it had provided to investors and analysts at the end of 2013.   "Senior management," the audit committee investigation stated, "considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance and, for the first two quarters of 2014, sought to maintain reported AFFO within the 2014 guidance range of $1.13 to $1.19 per share announced at the end of 2013."   ARCP management was keenly aware of the importance of supporting ARCP's artificially inflated AFFO in order to support ARCP's share price in the public markets, which in turn helped management maximize their incentive compensation.

158.    According to the Amended 2014 First Quarter Report, ARCP overstated AFFO in the 2014 First Quarter Report by $38.5 million, or 26.1%.

159.    AFFO was overstated in the 2014 First Quarter Report for two reasons.  First, ARCP had presented AFFO on a net basis but calculated the adjustments to net loss on a gross

basis.   Second, ARCP had committed a host of GAAP errors in its financial statements, including, among others:

- Labeling $9.4 million of expenses as merger and other non-routine transaction-related expenses when they were more appropriately characterized as recurring general and administrative expenses.

- Improperly recording $16.1 million of merger and other non-routine transaction-related expenses in the first quarter.  Most of that amount should have been recorded in 2013, and the rest should have been recorded in the second quarter.

- Upon consummation of the ARCT IV merger, the Operating Partnership entered into an agreement with an affiliate to acquire certain furniture, fixtures, equipment and other assets. ARCP originally capitalized $2.1 million of these costs even though there was no evidence of receipt of those materials.

- Mischaracterizing $20.6 million of expenses as merger and other non-routine transaction-related expenses that should have been capitalized as deferred financing costs and amortized accordingly.

- Failing to properly accrue a controlling interested transfer tax liability following consummation of the ARCT III Merger, in the first instance, and the CapLease Merger, in the second instance.

- Misclassifying $13.9 million of management fee expenses as merger and other non-routine transaction-related when they were in fact more appropriately considered management fees to affiliates.

160.   The audit committee also confirmed in the Amended 2014 First Quarter Report that ARCP had overstated AFFO for the corresponding quarter of 2013.  Specifically, in the 2013 First Quarter Report, AFFO for the quarter ended March 31, 2013 was overstated by $16.5 million.

161.   The Amended 2014 First Quarter Report listed the following GAAP errors in the 2013 First Quarter Report:

- ARCP improperly classified $5.4 million of expenses as "merger-related" for the three months ended March 31, 2013.

- ARCP improperly capitalized $4.1 million of furniture, fixtures, equipment costs and expensed $1.7 million of costs.

- $1.0 million of expenses were improperly classified as merger and other non-routine transaction-related expenses that should have been capitalized as deferred financing costs and amortized accordingly.

- $13.0 million of management fees were improperly classified as merger and other non-routine transaction-related expenses that should have been classified as management fees to affiliates.

- ARCP should have recorded a controlling interest transfer tax liability totaling $1.1 million upon consummation of the ARCT III Merger.

- $881,000 in equity-based compensation previously reported on a separate line item should instead have been reported within general and administrative expenses.

- $0.5 million of expense was incorrectly recorded as operating fees to affiliates.

- The original calculation of the net loss attributable to non-controlling interest holders for the three months ended March 31, 2013 excluded expenses that were improperly recorded at the Company's level. Those should have been included in the Company's determination of the net loss attributable to its non-controlling interest holders.

### 3. Amended 2014 Second Quarter Report's Adjustments to Net Loss and AFFO

162. In the Amended 2014 Second Quarter Report, the audit committee confirmed that senior management had attempted to fraudulently conceal the prior AFFO misrepresentations by switching to calculating AFFO on a gross basis and by cooking the books. Specifically, in the 2014 Second Quarter Report, the errors in calculating AFFO in the first quarter "were intentionally not corrected, and other AFFO and financial statement errors were intentionally

made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014."

163.    The audit committee found that ARCP had failed to account for various expenses and losses in the 2014 Second Quarter Report, including the following:

- The audit committee identified $1.2 million of merger and other non-routine transaction related expenses that should have been recorded during the second quarter.

- ARCP failed to report $5.8 million of annual bonus payments that accrued in the second quarter.

- ARCP failed to properly classify a property as held for sale as of June 30, 2014.  The audit committee adjusted the fair value of the property at that date and recognized a loss on held for sale assets of $1.8 million.

- ARCP incorrectly recorded a credit for interest expense of $1.1 million, which credit was already recorded through a separate transaction.

- The audit committee identified $0.9 million of general and administrative expenses that were recorded in the incorrect period that should have been recorded in the second quarter.

164.    Further, the audit committee identified numerous additional GAAP errors and mischaracterizations made by ARCP in the 2014 Second Quarter Report, many of which ARCP had also made in the 2014 First Quarter Report, including:

- The audit committee identified $0.8 million of costs that were improperly classified as merger and other non-routine transaction related expense that should have been capitalized as deferred financing costs and amortized accordingly.

- ARCP improperly classified $5.2 million of expenses as merger related.  Such amounts should have been accounted for as general and administrative expenses.

- ARCP improperly classified $0.7 million as merger and other non-routine transaction expenses that should have been classified as acquisition related expenses.

- The audit committee identified $0.5 million of general and administrative salary expense that had been improperly recorded as acquisition related expense in the three months ended June 30, 2014. Additionally, the audit committee identified $1.0 million of acquisition related salary expense that had been improperly recorded as general and administrative expense in the three months ended March 31, 2014, resulting in a net understatement of acquisition related expenses of $0.5 million in the six months ended June 30, 2014.

- The audit committee identified $1.8 million of acquisition related expense had been recorded twice in the second quarter.

- As a result of the restatement corrections, the audit committee updated ARCP's tax provision calculation which resulted in additional tax expense of $2.2 million in the second quarter.

- The audit committee identified a swap interest payment of $1.8 million that was incorrectly classified as a loss on derivative instruments.

- The audit committee concluded that $5.0 million of debt extinguishment costs, which were originally reported as interest expense, should have been reported as a separate line item caption within the consolidated statements of operations.

165.     As a result of this pervasively improper accounting, ARCP overstated AFFO in the 2014 Second Quarter Report by $19.3 million, or 9.4%, and net loss was understated by $13.3 million, or 30.8%, for the second quarter.

166.     The Amended 2014 Second Quarter Report also confirmed that ARCP had misstated AFFO in the corresponding quarter in 2013. Specifically, in the 2013 Second Quarter Report, AFFO for the six months ended June 30, 2013 was overstated by $14.1 million.

167.     The Amended 2014 Second Quarter Report listed the following GAAP errors in the 2013 Second Quarter Report:

- ARCP improperly recorded $13.0 million of management fees as merger and other non-routine transaction related expenses instead of as management fees to affiliates for the six months ended June 30, 2013.

- ARCP improperly capitalized $4.1 million of furniture, fixtures, equipment costs and expensed $1.7 million of costs during the six months ended June 30, 2013.

- ARCP should have recorded a controlling interest transfer tax liability totaling $1.1 million upon consummation of the ARCT III Merger for the six months ended June 30, 2013.

- $1.0 million of costs during the six months ended June 30, 2013 were improperly classified as merger and other non-routine transaction related expenses that should have been capitalized as deferred financing costs and amortized accordingly.

- During the three and six months ended June 30, 2013, ARCP improperly classified $0.4 million and $5.9 million, respectively, as "merger-related" instead of general and administrative expenses.

- $87,000 of merger and other non-routine transaction related expenses were improperly recorded in each of the three and six months ended June 30, 2013.

- $3.5 million and $4.3 million during the three and six months ended June 30, 2013, respectively, in equity-based compensation were improperly reported on a separate line item, within general and administrative expenses.

- $0.5 million of operating fees to affiliates were incorrectly recorded in the six months ended June 30, 2013.

- The original calculation of the net loss attributable to non-controlling interest holders for the six months ended June 30, 2013 excluded expenses that were improperly recorded at the Company level. These should have been included in the Company's determination of the net loss attributable to its non-controlling interest holders.

### 4.     2014 Third Quarter Report's Adjustments to Net Loss and AFFO in 2013 Third Quarter

168.    On or about March 2, 2015, at the same time it released its restated financials for 2013 and the first half of 2014, ARCP released its financial results for the third quarter of 2014

(the "2014 Third Quarter Report").  In that report, ARCP confirmed that it had overstated AFFO in the previously-issued 2013 Third Quarter Report.

169.    Specifically, in the 2013 Third Quarter Report, AFFO for the quarter ended September 30, 2013 was overstated by $4.4 million.

170.    The audit committee also announced the following GAAP violations in the 2013 Third Quarter Report:

- ARCP improperly recorded $13.0 million of management fees as merger and other non-routine transaction related expenses instead of as management fees to affiliates for the nine months ended September 30, 2013.

- ARCP improperly capitalized $4.1 million of furniture, fixtures, equipment costs and expensed $1.7 million of costs during the nine months ended September 30, 2013.

- ARCP should have recorded a controlling interest transfer tax liability totaling $1.1 million upon consummation of the ARCT III Merger for the nine months ended September 30, 2013.

- During the three and nine months ended September 30, 2013, ARCP improperly classified $0.3 million and $6.1 million, respectively, as "merger-related" instead of general and administrative expenses.

- $1.2 million and $2.2 million of expenses were improperly classified as merger and other transaction related expenses that should have been capitalized as deferred financing costs and amortized accordingly for the three and nine months ended September 30, 2013, respectively.

- ARCP should have recorded a controlling interest tax liability totaling $1.1 million upon consummation of the mergers with ARCT III.

- $167,000 and $254,000 of merger and other non-routine transaction related expenses were recorded in the incorrect period.

- $0.5 million of operating fees to affiliates were incorrectly recorded in the nine months ended September 30, 2013.

- ARCP improperly reported $7.2 million and $11.5 million during the three and nine months ended September 30, 2013, respectively, in equity-based compensation in its own line item.

- ARCP failed to recognize an impairment of $2.1 million on certain properties for the three and nine months ended September 30, 2013.

- The original calculation of the net loss attributable to non-controlling interest holders for the three and nine months ended September 30, 2013 excluded expenses that were improperly recorded at the Company level. These should have been included in the Company's determination of the net loss attributable to its non-controlling interest holders.

### 5.    *Schorsch's Self-Dealing*

171.   The audit committee's findings were not limited to ARCP's misrepresentations about AFFO and the GAAP violations in ARCP's financial statements. The audit committee also found multiple instances of self-dealing by Schorsch and his cronies.

172.   Specifically, in 2013 a subsidiary of Schorsch's real estate partnership purchased the historic Audrain Building in Newport, Rhode Island where Schorsch's mansion is located. Schorsch used the first floor of the Audrain Building to house his vintage car collection. In October 2013, he leased the second floor to ARCP and had ARCP pay for a major renovation. ARCP paid $8.8 million in tenant improvements, furniture and operating expenses during 2014. However, ARCP never moved into or occupied the Audrain Building.

173.   As a result of the audit committee's investigation, ARCP terminated the lease agreement. According to ARCP, it has been reimbursed $8.5 million through the delivery and retirement of 916,423 units in the Operating Partnership.

174.   The audit committee also found that, in connection with ARCP's transition to self-management, Schorsch and Block had been awarded more ARCP stock than had been approved by ARCP's compensation committee. That is, not only did Schorsch and Block

improperly overstate ARCP's AFFO in order to artificially inflate ARCP's stock price in the public markets, but they also positioned themselves to further benefit from ARCP's elevated share price by granting themselves more stock than the compensation committee guidelines had authorized.

175.    In connection with their resignations from ARCP, Block relinquished all of his improper equity awards and Schorsch relinquished all of his improper equity awards other than 1,000,000 shares of restricted stock, the vesting of which was accelerated.  According to ARCP, the vested shares are subject to claw-back by ARCP if Schorsch is found to have breached his fiduciary duty of loyalty or is found to have committed or admits to fraud or misconduct in connection with his responsibilities as a director or officer of ARCP.

176.    These allegations of self-dealing show a rampant lack of effective internal controls.

### 6.    ARCP Confirms the Existence of Material Weaknesses in Its Internal Controls during the Relevant Period

177.    In each of the Amended Reports, ARCP admitted – as it had forewarned on October 29, 2014 – that the statements in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, the 2013 Annual Report, the 2014 First Quarter Report, and the 2014 Second Quarter Report concerning the effectiveness of ARCP's internal controls were false.

178.    For example, in the Amended 2013 Annual Report, ARCP stated:

**Evaluation of Disclosure Controls and Procedures**

The Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 filed with the SEC on February 27, 2014 disclosed that the Company's former management, with the participation of its former Chief Executive Officer and former Chief Financial Officer, had evaluated the Company's disclosure controls and procedures (as defined in Rule 13a-15(e) or 15d-15(e)

under the Exchange Act) and, based on that evaluation, had concluded that the Company's disclosure controls and procedures were effective as of December 31, 2013.  In light of the findings of the Audit Committee investigation and a review made by the Company in connection with the preparation of the restatement presented in this Form 10-K/A, current management, under the supervision of our current Interim Chief Executive Officer and our current Chief Financial Officer, re-evaluated the Company's disclosure controls and procedures and, based on that evaluation, concluded that *the Company's disclosure controls and procedures were not effective at December 31, 2013* . . . .

### Management's Report on Internal Control over Financial Reporting

The Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 filed with the SEC on February 27, 2014 disclosed that the Company's former management had assessed the Company's internal control over financial reporting (excluding that relating to CapLease, Inc., which the Company acquired on November 5, 2013) under the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission in the 1992 Internal Control-Integrated Framework (the "COSO Framework"), and believed that the Company's internal control over financial reporting (as defined in Rule 13a-15(f) or 15d-15(f) under the Exchange Act) was effective as of December 31, 2013. In light of the findings of the Audit Committee investigation and a review made by the Company in connection with preparation of the restatement presented in this Form 10-K/A, current management performed a re-assessment of the Company's internal control over financial reporting under the COSO Framework (excluding both CapLease, Inc. and ARCT IV, the latter of which the Company acquired on January 3, 2014 in a transaction accounted for on a carryover basis of accounting and recast in the Company's historical financial statements) and concluded that *the Company's internal control over financial reporting was not effective as of December 31, 2013* . . . .

(Emphasis added to last sentence of each paragraph).

179.   ARCP then listed the material weaknesses that the audit committee had identified during its investigation.  The audit committee found that ARCP's disclosure controls and procedures had material weaknesses that allowed the information in its SEC filings to differ from its accounting records, gave senior management insufficient time to review SEC filings, did not

require that changes to numbers already approved by the audit committee be brought to the audit committee's attention, and allowed AFFO to be improperly formulated. These material weaknesses were described in detail in the Amended 2013 Annual Report as follows:

> **Material Weaknesses in Disclosure Controls and Procedures** –
> The Company's disclosure controls and procedures were not properly designed or implemented to ensure that the information contained in the Company's periodic reports and other SEC filings correctly reflected the information contained in the Company's accounting records and other supporting information and that AFFO per share (a non-GAAP measure that is an important industry metric) was correctly calculated. In addition, the Company did not have appropriate controls to ensure that its SEC filings were reviewed on a timely basis by senior management or that significant changes to amounts or other disclosures contained in a document that had previously been reviewed and approved by the Audit Committee were brought to the attention of the Audit Committee or its Chair for review and approval before the document was filed with the SEC. Finally, the Company did not have appropriate controls over the formulation of AFFO per share guidance or the periodic re-assessment of the Company's ability to meet its guidance.

180.     The audit committee also found that ARCP's internal controls over financial reporting had material weaknesses concerning related party transactions, conflicts of interest, and equity-based compensation. Furthermore, the audit committee identified significant deficiencies in ARCP's accounting close process and concerning critical accounting estimates and non-routine transactions, which, when aggregated, constituted a material weakness in ARCP's internal controls over financial reporting.

181.     These material weaknesses were described in detail in the Amended 2013 Annual Report as follows:

> **Material Weaknesses in Internal Control Over Financial Reporting** – A material weakness is defined as a deficiency, or a combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis.

During 2013, due in part to a number of large portfolio acquisitions, the Company experienced significant growth and increases in the complexity of its financial reporting and number of non-routine transactions. In late 2013, as a result of three impending transactions – the transition to self-management announced in August 2013 and effective on January 8, 2014, the acquisition of ARCT IV announced in July 2013 and completed on January 3, 2014 and the acquisition of Cole Real Estate Investments, Inc. announced in October 2013 and completed on February 7, 2014 – the complexity of the Company's transactions and the need for accounting judgments and estimates became more prevalent and had a severe impact on the Company's control environment.   These changes in business conditions, combined with the pressure of market expectations inherent in announcing AFFO per share guidance for 2014, demanded an enhanced control environment.

The control environment, as part of the internal control framework, sets the tone of an organization, influencing the control consciousness of its people and providing discipline and structure. Current management identified the following material weaknesses through its re-assessment of the Company's internal control over financial reporting:

**Related Party Transactions and Conflicts of Interest** – The Company did not maintain the appropriate controls to assess, authorize and monitor related party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates. Without the appropriate controls, the Company made certain payments to the Former Manager and its affiliates that were not sufficiently documented or that otherwise warrant scrutiny.

**Equity-Based Compensation** – The Company did not maintain appropriate controls over various grants of equity-based compensation. In the fourth quarter of 2013, in anticipation of the Company's transition to self-management, the Company entered into employment agreements with the Company's former Executive Chairman and Chief Executive Officer and its former Chief Financial Officer, and also approved the 2014 Outperformance Plan pursuant to which awards were made to them on January 8, 2014. Without the appropriate controls, these documents contained terms that were inconsistent with the terms authorized by the Compensation Committee. Additionally, the Company did not obtain copies of or administer the equity awards made by means of block grants allocated by the Former Manager

and its affiliates, nor did the Company review the awards for consistency with the Compensation Committee's authorization.

**Aggregation of Significant Deficiencies Within Business Process-Level Control Activities and Financial Reporting Controls** – The following significant deficiencies together constitute a material weakness:

- **Accounting Close Process** – The Company did not have consistent policies and procedures throughout its offices relating to purchase accounting, accounting for gain or loss on disposition and testing for impairment. In addition, senior management did not establish clear reporting lines and job responsibilities or promote accountability over business process control activities.

- **Critical Accounting Estimates and Non-Routine Transactions** – The Company did not maintain effective controls or develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates on a periodic basis.

182.    The nature of the majority of these internal control deficiencies establish that they existed not only as of December 31, 2013, but also throughout 2012 and 2013.

183.    Not only were the material weaknesses that existed in 2012 and 2013 never remediated, but in 2014 ARCP developed additional material weaknesses.  The Amended 2014 First Quarter Report and the Amended 2014 Second Quarter Report revealed the following additional deficiencies in ARCP's control environment for 2014:

- Failure to emphasize the importance of adherence to the Company's Code of Business Conduct and Ethics;

- Failure to establish appropriate policies and procedures surrounding the accounting treatment and classification of merger-related expenses, goodwill, impairments and purchase accounting;

- Failure to establish controls designed to prevent changes to the financial statements and supporting financial information by

senior management without the proper levels of review, support and approval; and

- Failure to establish controls designed to ensure that accounting employees would not be subject to pressure to make inappropriate decisions affecting the financial statements and/or the financial statement components of the calculation of AFFO, and that accounting concerns raised by employees would be timely and appropriately addressed by senior management.

184.    The audit committee also recognized three other material weaknesses in ARCP's internal controls over financial reporting that it believes arose in 2014:

**Cash Reconciliations and Monitoring** - The Company did not implement appropriate controls to record payments received and to reconcile its cash receipts and bank accounts on a timely basis.

**Information Technology General Controls - Access, Authentication and Information Technology Environment** - The Company did not maintain effective information technology environmental and governance controls, including controls over information systems security administration and management functions in the following areas: (a) granting and revoking user access rights; (b) timely notification of user departures; (c) periodic review of appropriateness of access rights; (d) physical access restrictions; and (e) segregation of duties.

**Information Technology General Controls Over Management of Third Party Service Providers** - When the transition services agreement between the Company and [ARC Properties Advisors, LLC] was terminated on January 8, 2014, the Company did not enter into a follow-on formal agreement with the affiliate of [ARC Properties Advisors, LLC] that managed technology infrastructure and systems significant to the Company's financial reporting process.  Without a formal agreement governing the delivery of services, the Company's management cannot make any assertions about the operating effectiveness of the third party service provider's controls over information systems, programs, data and processes financially significant to the Company or the security of the Company's data under the control of the related third party service provider.

185.    According to the audit committee, by the first quarter of 2014 the significant deficiencies in ARCP's accounting close process and concerning ARCP's critical accounting

estimates and non-routine transactions each had escalated into a material weakness in ARCP's internal controls over financial reporting.  Thus, in the Amended 2014 First Quarter Report and the Amended 2014 Second Quarter Report, these items were worsened from significant deficiencies to material weaknesses.

186.    The "internal controls" created by Schorsch, Block, Kay and McAlister while they were running ARCP were vastly ineffective and severely flawed.  Indeed, ARCP's auditor, Grant Thornton, provided an attestation report in the Amended 2013 Annual Report stating that ARCP had not maintained effective internal controls for the 2013 fiscal year:

> Management identified a material weakness related to the Company's failure to maintain controls associated with related party transactions and risks arising from contractual arrangements with affiliates.  A material weakness was identified by management related to the Company's failure to maintain controls related to stock based compensation, including the administration of certain restricted stock awards.  Additionally, a material weakness was identified by management as a result of the Company not maintaining and applying adequate policies and procedures, including those related to the accounting close process, critical accounting estimates and non-routine transactions,. [*sic*]
>
> In our report dated February 27, 2014, we expressed an unqualified opinion on the Company's internal control over financial reporting.  The material weaknesses discussed above were subsequently identified in connection with the restatement of the Company's previously issued financial statements.  Accordingly, management has revised its assessment about the effectiveness of the Company's internal control over financial reporting, and our present opinion on the effectiveness of the Company's internal control over financial reporting as of December 31, 2013, as presented herein, is different from that expressed in our previous report.  The material weaknesses were considered in connection with the aforementioned restatement, and this report does not affect our opinion on the Company's 2013 financial statements.
>
> In our opinion, because of the effect of the material weaknesses described above on the achievement of the objectives of the control criteria, *the Company has not maintained effective internal control over financial reporting as of December 31, 2013*, based on criteria established in the 1992 *Internal Control-Integrated*

*Framework* issued by COSO [the Committee of Sponsoring Organizations of the Treadway Commission].

(Emphasis added).

187.    Grant Thornton provided a similar attestation report in ARCP's Form 10-K for the year ended December 31, 2014, which stated in pertinent part:

The following material weaknesses have been identified and included in management's assessment.

- A material weakness related to the Company's failure to implement and maintain an effective internal control environment.

- A material weakness related to the Company's failure to maintain controls associated with related party transactions and risks arising from contractual arrangements with affiliates.

- A material weakness related to the Company's failure to maintain controls related to stock based compensation, including documentation of key terms of awards and the administration of certain restricted stock awards.

- A material weakness related to the Company's failure to establish appropriate policies, procedures and controls in the internal control environment, including those related to the accounting close process, critical accounting estimates and non-routine transactions.

- A material weakness related to the Company's failure to monitor and reconcile cash.

- A material weakness related to the Company's failure to maintain effective information technology environmental and governance controls, including management of system access and third party service providers.

In our opinion, because of the effect of the material weaknesses described above on the achievement of the objectives of the control criteria, *the Company has not maintained effective internal control over financial reporting as of December 31, 2014*, based on criteria established in the 2013 *Internal Control-Integrated Framework* issued by COSO.

(Emphasis added).

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS

### A.   The Cole Merger Registration Statement

188.   The Cole Merger Registration Statement was comprised of the Initial S-4 filed on or about November 5, 2013, S-4 Amendment No. 1 filed on or about December 9, 2013, S-4 Amendment No. 2 filed on or about December 20, 2013, and a Joint Proxy Statement/Prospectus filed on or about December 23, 2013.  The Cole Merger Registration Statement was signed by Defendants Schorsch, Kay, Block, Beeson, Weil, Jones, Budko, Kahane, Bowman, Michelson, and Rendell.

189.   The Initial S-4 incorporated by reference, among other things:  (a) the 2012 Annual Report; (b) the 2013 First Quarter Report; and (c) the 2013 Second Quarter Report. Amendment No. 1, Amendment No. 2, and the Joint Proxy Statement/Prospectus incorporated by reference, among other things:  (a) the 2012 Annual Report; (b) the 2013 First Quarter Report; (c) the 2013 Second Quarter Report; and (d) the 2013 Third Quarter Report.

190.   The 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report contained materially false and misleading statements concerning ARCP's financial results and the adequacy of its internal controls.

### 1.   *False and Misleading Statements Concerning ARCP's Financial Results*

191.   In the "MD&A" portions of each the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report, ARCP purported to disclose AFFO for the applicable period.  Each of these statements was materially false and misleading, however, because:

- In the 2012 Annual Report, taking into account the recasting of the Company's historical financial statements to present the effects of the Company's acquisition of ARCT IV, AFFO for

the year ended December 31, 2012 was overstated by $1.3 million, or 2.8%.

- In the 2013 First Quarter Report, AFFO for the quarter ended March 31, 2013 was overstated by $16.5 million, or 95%.

- In the 2013 Second Quarter Report, AFFO for the six months ended June 30, 2013 was overstated by $14.1 million, or 24%.

- In the 2013 Third Quarter Report, AFFO for the quarter ended September 30, 2013 was overstated by $4.4 million, or 10.4%.

192.    AFFO was overstated for at least two reasons.  First, ARCP had presented AFFO on a net basis but calculated the adjustments to net loss on a gross basis.  Second, in addition to this methodological error, ARCP had committed a host of GAAP errors.

193.    In their respective certifications to the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report, Schorsch and Block certified pursuant to Section 1350 of Chapter 63 of Title 18 of the United States Code that: "The . . . report . . . of the Company, which accompanies this Certificate, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and all information contained in this . . . report fairly presents, in all material respects, the financial condition and results of operations of the Company."  These statements were materially false and misleading because, as explained above, ARCP had materially overstated its AFFO in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report.

### 2.    False and Misleading Statements Concerning the Effectiveness of ARCP's Internal Controls

194.    In the 2012 Annual Report, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Exchange Act, management, with the participation of our Chief

Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Annual Report on Form 10-K. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded, as of the end of such period, that our disclosure controls and procedures are effective in recording, processing, summarizing and reporting, on a timely basis, information required to be disclosed by us in our reports that we file or submit under the Exchange Act.

### Management's Annual Report on Internal Control over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting. as defined in Rule 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended. Our internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles.

. . .

Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2012. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control-Integrated Framework.

Based on our assessment, our management believes that, as of December 31, 2012, our internal control over financial reporting is effective.

The effectiveness of our internal control over financial reporting as of December 31, 2012 has been audited by Grant Thornton LLP, an independent registered public accounting firm, as stated in their report included in this Annual Report on Form 10-K.

### Changes in Internal Control Over Financial Reporting

During the fourth quarter of fiscal year ended December 31, 2012, there were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) that have materially affected, or are reasonably

likely to materially affect, our internal control over financial reporting.

195.    In the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

> No change occurred in our internal controls over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) during the [applicable period] that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

196.    Further, in their respective certifications to the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report, Schorsch, and Block both stated as follows:

> 1. I have reviewed this . . . Report . . . of American Realty Capital Properties, Inc.;

> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect

the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

197. These statements were materially false and misleading. Whatever internal controls ARCP had in place were inadequate and ineffective. If ARCP had had effective internal controls, the material misstatement of ARCP's AFFO would not have occurred.

198. Indeed, ARCP subsequently confirmed in the Amended 2013 Annual Report that these statements were materially false and misleading when made. The nature of the internal control deficiencies identified by the audit committee establishes that the majority of those deficiencies existed as of December 31, 2012, as of March 31, 2013, as of June 30, 2013, and as of September 30, 2013.

**B.     ARCP's 2013 Annual Report**

199. ARCP filed its 2013 Annual Report on or about February 27, 2014. It was signed by, among others, Schorsch, Kay, Block, and McAlister, and the requisite SOX certifications were made by Schorsch and Block. The 2013 Annual Report contained materially false and misleading statements concerning ARCP's financial results and the adequacy of its internal controls.

*1.     False and Misleading Statements Concerning ARCP's Financial Results*

200. In Management's Discussion and Analysis of Financial Condition and Results of Operations (or the "MD&A" portion of the 2013 Annual Report) ARCP stated that its AFFO for the year ended December 31, 2013, was $163.9 million. This statement was materially false and misleading because, taking into account the recasting of ARCP's financial statements to account for the ARCT IV merger, AFFO was overstated in the 2013 Annual Report by $44.0 million, or

18.6%. AFFO was overstated in the 2013 Annual Report for three reasons. First, ARCP had presented AFFO on a net basis but calculated the adjustments to net loss on a gross basis. Second, ARCP had improperly included operating fees incurred to affiliates in calculating AFFO. Finally, in addition to these methodological errors, ARCP had committed a host of GAAP errors in its 2013 financial statements.

201. In the consolidated financial statements to the 2013 Annual Report, ARCP stated that its net loss attributable to shareholders for the year ended December 31, 2013, was $406.5 million. This statement was materially false and misleading because, taking into account the recasting of ARCP's financial statements to account for the ARCT IV merger, net loss attributable to shareholders was understated in the 2013 Annual Report by $16.8 million, or 3.5%. Net loss was understated because ARCP had committed a host of GAAP errors in its 2013 financial statements, as described above.

202. In their respective certifications to the 2013 Annual Report, Schorsch and Block certified pursuant to Section 1350 of Chapter 63 of Title 18 of the United States Code that: "The quarterly report on Form 10-Q of the Company, which accompanies this Certificate, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and all information contained in this quarterly report fairly presents, in all material respects, the financial condition and results of operations of the Company." The fact that Schorsch's and Block's certifications to the 2013 Annual Report incorrectly referred to a "quarterly report on Form 10-Q" instead of an "annual report on Form 10-K" further substantiates that neither Schorsch nor Block carefully reviewed and considered their certifications before they signed them.

203.   These statements were materially false and misleading because, as explained above, ARCP had materially overstated its AFFO and understated its net loss for the year ended December 31, 2013.

### 2. False and Misleading Statements Concerning the Effectiveness of ARCP's Internal Controls

204.   In the MD&A, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Exchange Act, management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Annual Report on Form 10-K. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded, as of the end of such period, that our disclosure controls and procedures are effective in recording, processing, summarizing and reporting, on a timely basis, information required to be disclosed by us in our reports that we file or submit under the Exchange Act.

> *Management's Annual Report on Internal Control over Financial Reporting*

> Our management is responsible for establishing and maintaining adequate internal control over financial reporting. as defined in Rule 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended. Our internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles.

> . . .

> Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2013. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in the 1992 *Internal Control-Integrated Framework*.

. . .

Based on our assessment, our management believes that, as of December 31, 2013, our internal control over financial reporting is effective.

The effectiveness of our internal control over financial reporting as of December 31, 2013 has been audited by Grant Thornton LLP, an independent registered public accounting firm, as stated in their report included in this Annual Report on Form 10-K.

### Changes in Internal Control Over Financial Reporting

During the fourth quarter of fiscal year ended December 31, 2013, there were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

205.    Further, in their respective certifications to the 2013 Annual Report, Schorsch,

and Block both stated as follows:

The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

206.   These statements were materially false and misleading.  Whatever internal controls ARCP had in place as of December 31, 2013, were inadequate and ineffective.  If ARCP had had effective internal controls, the material misstatement of ARCP's AFFO and net loss in the 2013 Annual Report would not have occurred.

207.   Indeed, ARCP subsequently confirmed in the Amended 2013 Annual Report that these statements were materially false and misleading when made:

**Evaluation of Disclosure Controls and Procedures**

The Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 filed with the SEC on February 27,

2014 disclosed that the Company's former management, with the participation of its former Chief Executive Officer and former Chief Financial Officer, had evaluated the Company's disclosure controls and procedures (as defined in Rule 13a-15(e) or 15d-15(e) under the Exchange Act) and, based on that evaluation, had concluded that the Company's disclosure controls and procedures were effective as of December 31, 2013.  In light of the findings of the Audit Committee investigation and a review made by the Company in connection with the preparation of the restatement presented in this Form 10-K/A, current management, under the supervision of our current Interim Chief Executive Officer and our current Chief Financial Officer, re-evaluated the Company's disclosure controls and procedures and, based on that evaluation, concluded that ***the Company's disclosure controls and procedures were not effective at December 31, 2013*** . . . .

**Management's Report on Internal Control over Financial Reporting**

The Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 filed with the SEC on February 27, 2014 disclosed that the Company's former management had assessed the Company's internal control over financial reporting (excluding that relating to CapLease, Inc., which the Company acquired on November 5, 2013) under the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission in the 1992 Internal Control-Integrated Framework (the "COSO Framework"), and believed that the Company's internal control over financial reporting (as defined in Rule 13a-15(f) or 15d-15(f) under the Exchange Act) was effective as of December 31, 2013. In light of the findings of the Audit Committee investigation and a review made by the Company in connection with preparation of the restatement presented in this Form 10-K/A, current management performed a re-assessment of the Company's internal control over financial reporting under the COSO Framework (excluding both CapLease, Inc. and ARCT IV, the latter of which the Company acquired on January 3, 2014 in a transaction accounted for on a carryover basis of accounting and recast in the Company's historical financial statements) and concluded that ***the Company's internal control over financial reporting was not effective as of December 31, 2013*** . . . .

(Emphasis added to last sentence of each paragraph).

C.    **ARCP's 2014 First Quarter Report**

208.    ARCP filed its 2014 First Quarter Report on or about May 8, 2014.  The report

and the requisite SOX certifications were signed by Schorsch and Block.  Like the 2013 Annual

Report, the 2014 First Quarter Report contained materially false and misleading statements

concerning ARCP's financial results and the adequacy of its internal controls.

*1.    False and Misleading Statements Concerning ARCP's Financial Results*

209.    In Management's Discussion and Analysis of Financial Condition and Results of

Operations (or the "MD&A" portion of the 2014 First Quarter Report) ARCP stated that its

AFFO for the quarter ended March 31, 2014, was $147.4 million.  This statement was materially

false and misleading because ARCP overstated AFFO in the 2014 First Quarter Report by $38.5

million, or 26.1%.  AFFO was overstated in the 2014 First Quarter Report for two reasons.  First,

ARCP had presented AFFO on a net basis but calculated the adjustments to net loss on a gross

basis.  Second, ARCP had committed a host of GAAP errors in its financial statements.

210.    In their respective certifications to the 2014 First Quarter Report, Schorsch and

Block both stated as follows:

> Based on my knowledge, this report does not contain any untrue
> statement of a material fact or omit to state a material fact
> necessary to make the statements made, in light of the
> circumstances under which such statements were made, not
> misleading with respect to the period covered by this report;
>
> Based on my knowledge, the financial statements, and other
> financial information included in this report, fairly present in all
> material respects the financial condition, results of operations and
> cash flows of the registrant as of, and for, the periods presented in
> this report . . . .

211.    Schorsch and Block further certified pursuant to Section 1350 of Chapter 63 of

Title 18 of the United States Code that:  "The quarterly report on Form 10-Q of the Company,

which accompanies this Certificate, fully complies with the requirements of Section 13(a) or

15(d) of the Securities Exchange Act of 1934, and all information contained in this quarterly report fairly presents, in all material respects, the financial condition and results of operations of the Company."

212.    These statements were materially false and misleading because, as explained above, ARCP had overstated its AFFO for the quarter ended March 31, 2014.

### 2.    False and Misleading Statements Concerning the Effectiveness of ARCP's Internal Controls

213.    In the MD&A, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

> No change occurred in our internal controls over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) during the three months ended March 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

214.    Further, in their respective certifications to the 2014 First Quarter Report, Schorsch and Block both stated as follows:

> The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> (a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its

consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

215.    These statements were materially false and misleading.    Whatever internal controls ARCP had in place as of March 31, 2014, were inadequate and ineffective.    Among

other things, Kay and Schorsch specifically directed that the improper accounting with respect to AFFO contained in the 2013 Annual Report be continued in the 2014 First Quarter Report. ARCP did not have the internal controls necessary to prevent Kay and Schorsch – ARCP's highest-ranking executive officers – from directing that the AFFO be materially misstated in the 2014 First Quarter Report.  Moreover, they knew the internal controls were ineffective because they had directed the misstatements to be made.

216.    Indeed, ARCP subsequently confirmed in the Amended 2014 First Quarter Report that these statements were materially false and misleading when made:

> The Company's Quarterly Report on Form 10-Q for the fiscal quarter ended March 31, 2014 filed with the SEC on May 8, 2014 disclosed that, in accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Company's former management, under the supervision and with the participation of its former Chief Executive Officer and former Chief Financial Officer, had carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) and, based on that evaluation, had concluded that the Company's disclosure controls and procedures were effective at March 31, 2014.  In light of the findings of the Audit Committee investigation and a review made by the Company in connection with the preparation of the restatement presented in this Form 10-Q/A, current management, under the supervision of our current Interim Chief Executive Officer and our current Chief Financial Officer, re-evaluated the Company's disclosure controls and procedures and, based on that evaluation, concluded that ***the Company's disclosure controls and procedures were not effective at March 31, 2014***.
>
> The Company's current management based its conclusion on the following:  ***The controls and procedures and internal control over financial reporting that had existed at December 31, 2013***, as disclosed in the Amended 10-K, ***had not been remediated at March 31, 2014***.  Moreover, ***current management identified additional weaknesses in internal control over financial reporting at March 31, 2014***.
>
> (Emphasis added).

    **D.**    **ARCP's 2014 Second Quarter Report**

217.    ARCP filed its 2014 Second Quarter Report on or about July 29, 2014.  The report was signed by Schorsch, Block and McAlister, and the requisite SOX certifications were made by Schorsch and Block.  Like the 2013 Annual Report and the 2014 First Quarter Report, the 2014 Second Quarter Report contained materially false and misleading statements concerning ARCP's financial results and the adequacy of its internal controls.

    *1.*    *False and Misleading Statements Concerning ARCP's Financial Results*

218.    In its 2014 Second Quarter Report, ARCP changed its calculation of its AFFO from the net method to the gross method.  In Management's Discussion and Analysis of Financial Condition and Results of Operations (or the "MD&A" portion of the 2014 Second Quarter Report) ARCP stated that its AFFO for the quarter ended June 30, 2014, was $205.3 million.  This statement was materially false and misleading because ARCP overstated AFFO by $19.3 million, or 9.4%, for the second quarter.  Moreover, ARCP stated that its AFFO for the six months ended June 30, 2014 was $353.1 million.  This statement was materially false and misleading because ARCP overstated AFFO by $52.4 million, or 14.8%, for the first half of 2014.  The figures provided by ARCP were falsely inflated due to Defendants' cooking of the books in an attempt to conceal prior errors in calculating AFFO.  This fraudulent accounting also had the effect of materially understating the net loss reported by the Company under GAAP for the three months ended June 30, 2014.  ARCP reported that its net loss for the three months ended June 30, 2014 was $43.3 million.  ARCP understated net loss by $13.3 million, or 30.8%, for the second quarter.

219.    In their respective certifications to the 2014 Second Quarter Report, Schorsch and Block both stated as follows:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report . . . .

220.     Schorsch and Block further certified pursuant to Section 1350 of Chapter 63 of Title 18 of the United States Code that:  "The quarterly report on Form 10-Q of the Company, which accompanies this Certificate, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and all information contained in this quarterly report fairly presents, in all material respects, the financial condition and results of operations of the Company."

221.     These statements were materially false and misleading because, as explained above, ARCP had overstated its AFFO and understated its net loss for the quarter ended June 30, 2014.

### 2.     False and Misleading Statements Concerning the Effectiveness of ARCP's Internal Controls

222.     In the MD&A, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

No change occurred in our internal controls over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) during the three months ended March 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

223.    Further, in their respective certifications to the 2014 Second Quarter Report,

Schorsch and Block both stated as follows:

The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

224.    These statements were materially false and misleading.    Whatever internal controls ARCP had in place as of June 30, 2014 were inadequate and ineffective.    Schorsch knew the internal controls were inadequate because he directed Block and McAlister to cover up the improper accounting from the 2013 Annual Report and the 2014 First Quarter Report by cooking the books in the second quarter.    Indeed, ARCP admitted in its October 29, 2014 Form 8-K and in the Amended Reports that the Company's improper accounting in its public filings had been intentionally concealed, and fired the Company's CFO and CAO as a result.    ARCP's internal controls with respect to financial reporting were utterly ineffective to prevent the fraudulent concealment of improper accounting by ARCP's highest ranking officials.

225.    Indeed, ARCP subsequently confirmed in the Amended 2014 Second Quarter Report that these statements were materially false and misleading when made:

The Company's Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2014 filed with the SEC on July 29, 2014 disclosed that, in accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Company's former management, under the supervision and with the participation of its former Chief Executive Officer and former Chief Financial Officer, had carried out an evaluation of the effectiveness of our disclosure controls

-79-

and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) and, based on that evaluation, had concluded that the Company's disclosure controls and procedures were effective at June 30, 2014.  In light of the findings of the Audit Committee investigation and a review made by the Company in connection with the preparation of the restatement presented in this Form 10-Q/A, current management, under the supervision of our current Interim Chief Executive Officer and our current Chief Financial Officer, re-evaluated the Company's disclosure controls and procedures and, based on that evaluation, concluded that *the Company's disclosure controls and procedures were not effective at June 30, 2014*.

The Company's current management based its conclusion on the following:  *The material weaknesses in disclosure controls and procedures and internal control over financial reporting that had existed at December 31, 2013*, as disclosed in the Amended 10-K, *had not been remediated at June 30, 2014*.  Moreover, *current management identified additional weaknesses in internal control over financial reporting at June 30, 2014*.

(Emphasis added).

E.      **ARCP's Earnings Call Concerning the Second Quarter Results**

226.    On or about July 29, 2014, ARCP held an earnings call in connection with the release of its financial results for the second quarter of 2014.  During that call, Kay touted the strength of ARCP's operations over the prior quarters and the "transparency" of its second quarter results:  "As with any large company there will [be] challenges as well as opportunities but the foundation laid over the past several quarters position [*sic*] the company for the future success. . . .   We hope you can appreciate the transparency provided this quarter and we continue to focus on supplying the most meaningful information to you about the Company and our guidance."

227.    Kay's statements were materially false and misleading.  Kay learned in or around February 2014 that the AFFO in the 2013 Annual Report was overstated due to improper accounting, and he directed ARCP's CFO and CAO not to correct or disclose the improper

accounting.  He, along with Schorsch, directed ARCP to continue the improper accounting in the 2014 First Quarter Report.  Thus, Kay's assertion on July 29, 2014 that the Company had built a solid foundation over the prior quarters and that the Company was being transparent in its financial reporting were not true.

> F.       **ARCP's Investor Day in September 2014**

228.    On or about September 17, 2014, ARCP held its Investor Day.  Schorsch, Kay, Block, and McAlister were all present and spoke at length during the Investor Day.

229.    When asked about whether the May 2014 reporting blunders were a thing of the past, Block insinuated that they were, and stated:  "The proof is in the results in terms of . . . the accuracy and transparency of the numbers."

230.    This statement was materially false and misleading because as of September 17, 2014, ARCP's financial results were not accurate.  At that time, Block knew that the 2013 Annual Report and the 2014 First Quarter Report contained inflated AFFO figures due to improper accounting, and he knew that Schorsch had ordered him to conceal that improper accounting in the 2014 Second Quarter Report by cooking the books.

> H.       **ARCP's October 29, 2014 Form 8-K and Kay's Statements on the Investor Conference Call Concerning that Form 8-K**

231.    On or about October 29, 2014, Kay held a conference call with investors in which he stated the following:

> "[W]e had two employees [Block and McAlister] which [sic] have resigned as a result of the effects of that calculation and the nondisclosure of the error in the first quarter.  None of the executives that are currently at the Company have been implicated during the investigation related to the concealment of the error."

232.    Kay also told investors that he did not personally learn of the accounting fraud until October 24, 2014.

233.    These statements were materially false and misleading because they did not reveal all of the individuals who were involved in perpetrating the fraud and the true extent of Kay's involvement.  In or around February 2014, Kay, Block, and McAlister all knew of the improper accounting with respect to AFFO in the 2013 Annual Report, and Kay directed Block and McAlister not to disclose or correct the improper accounting.  Schorsch and Kay specifically directed ARCP to continue that improper accounting and materially overstate AFFO in the 2014 First Quarter Report.  Schorsch then directed Block to cover up the prior improper accounting in the 2014 Second Quarter Report.  Thus, ARCP's and Kay's statements that Block and McAlister were the only executives involved in the improper accounting and fraudulent concealment were materially false and misleading.

## **DEFENDANTS' SCIENTER**

234.    Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

235.    Except for the materially false and misleading statements in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the 2013 Annual Report concerning ARCP's AFFO and net loss, Defendants acted with scienter with respect to the materially false and misleading statements discussed above in paragraphs 188-233.

236.    As the President of ARCP, Kay took control of the day-to-day operations of ARCP.  According to McAlister's verified complaint, Kay learned of the improper accounting in the 2013 Annual Report with respect to AFFO in early 2014.  However, Kay directed ARCP to continue to use the improper accounting with respect to AFFO in the 2014 First Quarter Report.  Moreover, due to his day-to-day control over ARCP, Kay knew, or was reckless in not knowing, that Schorsch directed Block and McAlister to conceal the improper accounting in the 2013

Annual Report and the 2014 First Quarter Report by converting to the gross method of reporting AFFO and cooking the books in the 2014 Second Quarter Report.  Kay knew that ARCP's financial reporting was not accurate when he made false and misleading statements to Plaintiffs in September 2014.  Kay also knew that the accounting fraud at ARCP extended beyond Block and McAlister when he stated otherwise on or about October 29, 2014.

237.    Kay also knew or was reckless in not knowing that ARCP's internal controls over financial reporting and its disclosure controls and procedures contained material weaknesses. The material weaknesses identified by the audit committee are so pervasive that Kay, as President of the Company, either knew about or was willfully blind to the systematic ineffectiveness of ARCP's internal controls.  Indeed, many of the internal control material weaknesses that the audit committee identified were the responsibility of senior management, including, among other things:  failing to design and implement controls and procedures to ensure that information contained in ARCP's public filings correctly reflected the information contained in ARCP's accounting records and supporting documents; failing to ensure that ARCP's public filings were reviewed on a timely basis by senior management; failing to emphasize to employees the importance of adherence to ARCP's code of business conduct and ethics; failing to establish controls designed to prevent changes to the financial statements and supporting financial information by senior management without the proper level of review, support and approval; failing to establish controls designed to ensure that accounting employees would not be subject to pressure to make inappropriate decisions affecting the financial statements and/or the financial statement components of calculation of AFFO; failing to establish controls designed to ensure that accounting concerns raised by employees would be timely and appropriately addressed by senior management; failing to maintain appropriate controls to assess,

authorize and monitor related party transactions, validate the appropriateness of such transactions and manage the risks arising from contractual relationships with affiliates; failing to maintain appropriate controls over the grants of equity-based compensation; failing to maintain and develop standardized procedures for management review and approval of the accounting treatment of all critical and significant estimates on a periodic basis; and failing to establish clear reporting lines and job responsibilities.

238.  Kay's scienter is further demonstrated by the fact that he was asked to step down from his position with ARCP on or about December 15, 2014.

239.  As the CFO of ARCP, Block bore the ultimate responsibility for ARCP's finances.  According to McAlister's verified complaint, Block learned of the improper accounting in the 2013 Annual Report with respect to AFFO in early 2014, yet Block did nothing to correct the accounting error or to prevent the improper accounting being repeated in the 2014 First Quarter Report.  In fact, Block certified the accuracy of the 2014 First Quarter Report, as well as the adequacy of ARCP's internal controls, when he knew that the 2014 First Quarter Report contained improper accounting.  At Schorsch's behest, Block then attempted to conceal the improper accounting by converting to the gross method of reporting AFFO and cooking the books in the 2014 Second Quarter Report, which he again certified to be accurate.  Block was thus fully aware of the inaccuracy of ARCP's financial reports when he vouched for their accuracy during ARCP's Investor Day on or about September 17, 2014.

240.  Block also knew or was reckless in not knowing that ARCP's internal controls over financial reporting and its disclosure controls and procedures contained material weaknesses.  The material weaknesses identified by the audit committee are so pervasive that Block, as CFO, either knew about or was willfully blind to the systematic ineffectiveness of

ARCP's internal controls.  Indeed, many of the internal control material weaknesses that the audit committee identified were the responsibility of senior management, including, among other things:  failing to design and implement controls and procedures to ensure that information contained in ARCP's public filings correctly reflected the information contained in ARCP's accounting records and supporting documents; failing to ensure that ARCP's public filings were reviewed on a timely basis by senior management; failing to emphasize to employees the importance of adherence to ARCP's code of business conduct and ethics; failing to establish controls designed to prevent changes to the financial statements and supporting financial information by senior management without the proper level of review, support and approval; failing to establish controls designed to ensure that accounting employees would not be subject to pressure to make inappropriate decisions affecting the financial statements and/or the financial statement components of calculation of AFFO; failing to establish controls designed to ensure that accounting concerns raised by employees would be timely and appropriately addressed by senior management; failing to maintain appropriate controls to assess, authorize and monitor related party transactions, validate the appropriateness of such transactions and manage the risks arising from contractual relationships with affiliates; failing to maintain appropriate controls over the grants of equity-based compensation; failing to maintain and develop standardized procedures for management review and approval of the accounting treatment of all critical and significant estimates on a periodic basis; and failing to establish clear reporting lines and job responsibilities.  Moreover, one of the material weaknesses that the audit committee identified was ARCP's failure to implement appropriate controls over the equity awards granted to Block himself.  Thus, Block not only knew about the ineffectiveness of ARCP's internal controls, he took advantage of them to the detriment of ARCP's shareholders.

241.    Block's scienter is further demonstrated by the audit committee's request that he leave ARCP following the audit committee's preliminary investigation into the accounting fraud in September and October of 2014.

242.    As the CAO of ARCP, McAlister was in charge of ARCP's accounting.  By her own judicial admission, McAlister learned of the improper accounting with respect to AFFO in the 2013 Annual Report in early 2014, yet she did nothing to correct the accounting error or to prevent the improper accounting from being repeated in the 2014 First Quarter Report. McAlister also was fully aware of Schorsch's direction to Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to the gross method of reporting AFFO and cooking the books in the 2014 Second Quarter Report. McAlister willfully signed the 2014 Second Quarter Report despite knowing of the fraudulent accounting contained in such report.

243.    McAlister also knew or was reckless in not knowing that ARCP's internal controls over financial reporting and its disclosure controls and procedures contained material weaknesses.  The material weaknesses identified by the audit committee are so pervasive that McAlister, as CAO, either knew about or was willfully blind to the systematic ineffectiveness of ARCP's internal controls.  Indeed, many of the internal control material weaknesses that the audit committee identified were the responsibility of senior management, including, among other things:  failing to design and implement controls and procedures to ensure that information contained in ARCP's public filings correctly reflected the information contained in ARCP's accounting records and supporting documents; failing to ensure that ARCP's public filings were reviewed on a timely basis by senior management; failing to emphasize to employees the importance of adherence to ARCP's code of business conduct and ethics; failing to establish

controls designed to prevent changes to the financial statements and supporting financial information by senior management without the proper level of review, support and approval; failing to establish controls designed to ensure that accounting employees would not be subject to pressure to make inappropriate decisions affecting the financial statements and/or the financial statement components of calculation of AFFO; failing to establish controls designed to ensure that accounting concerns raised by employees would be timely and appropriately addressed by senior management; failing to maintain appropriate controls to assess, authorize and monitor related party transactions, validate the appropriateness of such transactions and manage the risks arising from contractual relationships with affiliates; failing to maintain appropriate controls over the grants of equity-based compensation; failing to maintain and develop standardized procedures for management review and approval of the accounting treatment of all critical and significant estimates on a periodic basis; and failing to establish clear reporting lines and job responsibilities.

244.    McAlister's scienter is further demonstrated by the audit committee's request that she leave ARCP following the audit committee's preliminary investigation into the accounting fraud in September and October of 2014.

245.    As the founder, CEO, and Chairman of ARCP, Schorsch was intimately familiar with, and exercised substantial control over, every aspect of ARCP's business.  Indeed, Block, Schorsch's longtime friend and colleague, described Schorsch at the September 2014 Investor Day as a "micromanager."   Schorsch directed ARCP to commit improper accounting with respect to AFFO in ARCP's 2014 First Quarter Report.   Despite directing this improper accounting, Schorsch certified the accuracy of ARCP's financial reporting and the adequacy of its internal controls in the 2014 First Quarter Report.   Moreover, according to McAlister's

verified complaint, on or about July 28, 2014, Schorsch willfully directed Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to the gross method of reporting AFFO and cooking the books in the 2014 Second Quarter Report.  Even though he instructed his CFO to commit financial fraud, Schorsch still signed a certification verifying the accuracy of the 2014 Second Quarter Report and the adequacy of ARCP's internal controls.

246.    Schorsch also knew or was reckless in not knowing that ARCP's internal controls over financial reporting and its disclosure controls and procedures contained material weaknesses.  The material weaknesses identified by the audit committee are so pervasive that Schorsch, as CEO and Chairman of the Company, either knew about or was willfully blind to the systematic ineffectiveness of ARCP's internal controls.  Indeed, many of the internal control material weaknesses that the audit committee identified were the responsibility of senior management, including, among other things:  failing to design and implement controls and procedures to ensure that information contained in ARCP's public filings correctly reflected the information contained in ARCP's accounting records and supporting documents; failing to ensure that ARCP's public filings were reviewed on a timely basis by senior management; failing to emphasize to employees the importance of adherence to ARCP's code of business conduct and ethics; failing to establish controls designed to prevent changes to the financial statements and supporting financial information by senior management without the proper level of review, support and approval; failing to establish controls designed to ensure that accounting employees would not be subject to pressure to make inappropriate decisions affecting the financial statements and/or the financial statement components of calculation of AFFO; failing to establish controls designed to ensure that accounting concerns raised by employees would be

timely and appropriately addressed by senior management; failing to maintain appropriate controls to assess, authorize and monitor related party transactions, validate the appropriateness of such transactions and manage the risks arising from contractual relationships with affiliates; failing to maintain appropriate controls over the grants of equity-based compensation; failing to maintain and develop standardized procedures for management review and approval of the accounting treatment of all critical and significant estimates on a periodic basis; and failing to establish clear reporting lines and job responsibilities. Moreover, one of the material weaknesses that the audit committee identified was ARCP's failure to implement appropriate controls over the equity awards granted to Schorsch himself. Another material weakness identified by the audit committee was the improper payments that Schorsch had ARCP make to finance the renovations in the Audrain Building, a clear instance of self-dealing by a senior executive. Thus, Schorsch not only knew about the ineffectiveness of ARCP's internal controls, he took advantage of them to the detriment of ARCP's shareholders.

247. Schorsch's scienter is further demonstrated by ARCP's independent directors' decision to sever all ties between ARCP and Schorsch on or about December 12, 2014.

248. ARCP acted with scienter because Schorsch's, Kay's, Block's, and McAlister's scienter is imputed to ARCP. ARCP has also admitted that its senior management learned of, but intentionally failed to correct, the false AFFO in the 2013 Annual Report, that its senior management intentionally failed to prevent AFFO from being overstated again in the 2014 First Quarter Report, and that its senior management intentionally cooked ARCP's books in the 2014 Second Quarter Report in order to cover up the prior AFFO misrepresentations.

**DEFENDANTS' NEGLIGENCE WITH RESPECT TO THE REPORTED AFFO IN THE
2012 ANNUAL REPORT, THE 2013 FIRST QUARTER REPORT, THE 2013 SECOND
QUARTER REPORT, AND THE 2013 THIRD QUARTER REPORT, AND THE
REPORTED AFFO AND NET LOSS IN THE 2013 ANNUAL REPORT**

249.    Plaintiffs do not allege that Defendants acted with scienter with respect to the
materially false and misleading statements in the 2012 Annual Report, the 2013 First Quarter
Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the 2013 Annual
Report concerning ARCP's AFFO and net loss.

250.    However, for purposes of Plaintiffs' claims under Section 18 of the Exchange
Act, ARCP, through Schorsch and Block, was at least negligent in making statements in the 2012
Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third
Quarter Report, and the 2013 Annual Report concerning the accuracy of the financial
information presented therein.

251.    Had Schorsch acted with the standard of care required of a CEO and Chairman of
a public company, he would have been aware that AFFO in the 2012 Annual Report, the 2013
First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the
2013 Annual Report was materially overstated, and that net loss in the 2013 Annual Report was
materially understated due to improper accounting.

252.    Had Block acted with the standard of care required of a CFO of a public
company, he would have been aware that AFFO in the 2012 Annual Report, the 2013 First
Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the 2013
Annual Report was materially overstated, and that net loss was materially understated in the
2013 Annual Report due to improper accounting.

253.    Schorsch's and Block's knowledge concerning the pervasive material weaknesses
in ARCP's internal controls over financial reporting and in ARCP's disclosure controls and

procedures meant that they should have exercised particular diligence before making statements about the accuracy of the financial information presented in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the 2013 Annual Report.   Schorsch and Block, however, utterly failed to exercise the required diligence.   These ARCP executives acted in bad faith.   Their failings are imputable to ARCP.

## PLAINTIFFS' ACTUAL RELIANCE

254.   Prior to making the decision to purchase/acquire ARCP common stock between February 7, 2014 and October 29, 2014, an investment analyst at Archer actually read, reviewed and relied upon the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report, including the reported AFFO in those reports, as well as ARCP's statements about the adequacy and effectiveness of ARCP's internal controls.   The investment analyst at Archer actually relied upon information contained in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, and the 2013 Third Quarter Report in making each purchase set forth on Exhibits A through C on behalf of Plaintiffs and in acquiring ARCP common stock in the Cole Merger.

255.   Prior to the decision to purchase ARCP common stock between September 24, 2014 and October 29, 2014, an investment analyst also at Archer actually read, reviewed and relied upon the 2013 Annual Report, the 2014 First Quarter Report, and the 2014 Second Quarter Report, including the reported AFFO and net loss figures in those reports, as well as ARCP's statements about the adequacy and effectiveness of ARCP's internal controls.   The investment analyst at Archer actually relied upon information contained in the 2013 Annual Report, the 2014 First Quarter Report, and the 2014 Second Quarter Report in making each purchase after July 29, 2014, set forth on Exhibits A through C on behalf of Plaintiffs.

256.     The investment analyst at Archer also read and relied upon the statements made by Kay and Block during the ARCP earnings call on or about July 29, 2014.  The investment analyst at Archer actually relied upon these statements in making each purchase after July 29, 2014, set forth on Exhibits A through C on behalf of Plaintiffs.

257.     The investment analyst at Archer listened to and relied upon statements made by Kay and Block at ARCP's Investor Day on or about September 17, 2014. The investment analyst at Archer actually relied upon these statements in making each purchase after September 17, 2014, set forth on Exhibits A through C on behalf of Plaintiffs.

## PRESUMPTION OF RELIANCE

258.     In addition to Plaintiffs' actual reliance, Plaintiffs intend in the alternative to rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:  (a) Defendants made public misrepresentations or failed to disclose material facts during the relevant time period; (b) the omissions and misrepresentations were material; (c) ARCP common stock traded in an efficient market; (d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of ARCP common stock; and (e) Plaintiffs purchased/acquired ARCP common stock between the time Defendants misrepresented or failed to disclose material facts and the time when the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

259.     The market for ARCP common stock was open, well-developed and efficient at all relevant times.  As a result of the aforementioned materially false and misleading statements and failures to disclose, ARCP common stock traded at artificially inflated prices during the relevant period.  The artificial inflation continued until the time the market came to realize the truth about ARCP's overstated AFFO, net loss, GAAP errors, and ineffective internal controls.

260.    At all relevant times, the market for ARCP common stock was efficient for the following reasons, among others:  (a) ARCP filed periodic reports with the SEC; (b) the stock was listed and actively traded on the NASDAQ stock exchange; (c) numerous analysts employed by major brokerage firms followed ARCP; and (d) ARCP regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

261.    Plaintiffs purchased/acquired ARCP common stock in reliance on the market price of ARCP common stock, which reflected all the information in the market, including the misstatements by Defendants.

## LOSS CAUSATION

262.    During the period when ARCP filed its Cole Merger Registration Statement, its 2013 Annual Report, its 2014 First Quarter Report, its 2014 Second Quarter Report, and up until October 29, 2014, the Company's shares traded in the $11-to-$15 per share range.

263.    On October 28, 2014, ARCP's common stock closed at a price of $12.38 per share.

264.    On October 29, 2014, ARCP filed a Form 8-K and Kay held an investor conference call in which the improper accounting, the fraudulent concealment of that improper accounting, and the lack of effective internal controls were partially revealed.  The October 29 disclosure blamed Block and McAlister for the financial misstatements.

265.    The October 29 partial corrective disclosure caused the following drops in ARCP's stock price:  on October 29, 2014, ARCP's common stock dropped as low as $7.85 per share, and closed at a price of $10.00 per share; on October 30, 2014, ARCP's common stock

closed at a price of $9.42 per share; on October 31, 2014, ARCP's common stock closed at a price of $8.87 per share; and on November 3, 2014, ARCP's common stock closed at a price of $7.85 per share.

266.    By December 12, 2014, ARCP's common stock had risen back to close at $8.99 per share.  However, on December 15, 2014, ARCP issued another partial corrective disclosure concerning the resignations of Schorsch, Kay and Beeson.

267.    The December 15, 2014 partial corrective disclosure caused the following drops in ARCP's stock price:  on December 15, 2014, ARCP's common stock closed at a price of $8.23 per share; and on December 16, 2014, ARCP's common stock closed at a price of $7.70 per share.

268.    On December 17, 2014, ARCP's common stock closed at a price of $8.41 per share.  The following day, McAlister filed her verified complaint in New York State Supreme Court, disclosing Kay's and Schorsch's involvement in the improper accounting and fraudulent concealment.

269.    The December 18, 2014 corrective disclosure caused ARCP's common stock to drop to $8.07 per share at closing on December 18, 2014, and $8.02 per share at closing on December 19, 2014.

270.    Moreover, the aforementioned drops in stock price reflected the gradual materialization of the risk that ARCP did not have adequate internal controls to ensure the integrity and accuracy of its financial reporting.

271.    In light of general investor concerns about the quality of the Company's accounting functions, internal controls and corporate governance (as highlighted by several embarrassing reporting mishaps), ARCP desperately sought to reassure investors that it had

righted the ship and that its internal control systems were above reproach.  In doing so, the Company concealed the foreseeable risk that its utter lack of meaningful controls would enable corrupt members of senior management to mislead investors by doctoring ARCP's financial results. Beginning with the October 29, 2014 Form 8-K, that foreseeable risk gradually materialized, culminating in the resignations of senior management and the revelation of their complicity in deliberate accounting fraud, and causing the Company's stock price to decline by $4.53 per share between October 29 and November 3, 2014, by $1.29 per share between December 15 and December 16, 2014, and by $0.39 per share between December 18 and December 19, 2014.

## NO SAFE HARBOR

272.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not "forward-looking statements" nor were they identified as "forward-looking statements" when made.  Nor was it stated with respect to any of the statements forming the basis of this Complaint that actual results "could differ materially from those projected."  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of ARCP who knew that those statements were false when made.

## SECOND CAUSE OF ACTION

**Violations of Section 18 of the Exchange Act**
**Misstatements and Omissions in 2012 Annual Report, 2013 First Quarter Report, 2013**
**Second Quarter Report, 2013 Third Quarter Report and 2013 Annual Report Concerning**
**AFFO and Net Loss**
**Against Defendant ARCP**

273.     Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

274.     As alleged herein, Defendant ARCP caused (at least negligently) statements to be made in the 2012 Annual Report, 2013 First Quarter Report, 2013 Second Quarter Report, and 2013 Third Quarter Report, and the 2013 Annual Report (each filed with the SEC pursuant to the rules or regulations of the Exchange Act) concerning ARCP's AFFO and net loss, which statements were, at the time and in light of the circumstances under which they were made, false or misleading with respect to material facts.

275.     In purchasing ARCP common stock, Plaintiffs' investment team actually read, and had direct eyeball reliance on, the statements in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the 2013 Annual Report concerning ARCP's AFFO and net loss.

276.     Specifically, an investment analyst at Archer read ARCP's statement that AFFO for the year ended December 31, 2012 was $10.5 million and $126.2 million pro forma, for the quarter ended March 31, 2013 was $30.8 million, for the quarter ended June 30, 2013 was $32.8 million, for the quarter ended September 30, 2013 was $46.7 million, for the year ended December 31, 2013 was $163.9 million, and that net loss for the year ended December 31, 2013 was $406.5 million.  In accordance with ARCP's advice to its investors, the investment analyst at Archer actually relied on AFFO as a useful metric to analyze the sustainability of ARCP's long-

term operating performance and to compare ARCP's operating performance to other companies. Archer also actually relied on net loss, an important metric of the Company.

277.    In ignorance of the falsity of Defendant ARCP's statements or of the true facts, Plaintiffs purchased/acquired ARCP common stock in actual, eyeball reliance upon Defendants' representations.

278.    Defendant ARCP's materially false or misleading statements artificially inflated the price of ARCP common stock.

279.    Had they known the true facts, Plaintiffs would not have purchased/acquired ARCP common stock and/or would not have purchased/acquired them at the inflated price they paid.

280.    Upon disclosure of the true facts and/or the materialization of the concealed risks, the price of ARCP common stock dropped, and Plaintiffs suffered damages in an amount to be proven at trial.

281.    By reason of the foregoing, Defendant ARCP is liable to Plaintiffs for violations of Section 18 of the Exchange Act, 15 U.S.C. §78*r*.

282.    Taking into account their tolling agreement with ARCP, Plaintiffs have brought this claim within one year of discovery of the violations alleged herein, and within three years of the accrual of this cause of action.

### THIRD CAUSE OF ACTION

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Misstatements and Omissions in Cole Merger Registration Statement and 2013 Annual
Report Concerning Adequacy of ARCP's Internal Controls
Against Defendants ARCP, Schorsch and Block**

283.    The Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

284.    Defendants ARCP, Schorsch and Block knew, or were reckless in failing to know, of the material misrepresentations contained in, and the material omissions from, the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report (which were incorporated by reference into the Cole Merger Registration Statement), and the 2013 Annual Report concerning the adequacy of ARCP's internal controls.

285.    Defendants Schorsch and Block with knowledge of or reckless disregard for the truth, made, disseminated, and approved the filing with the SEC of ARCP's Cole Merger Registration Statement and the 2013 Annual Report, as set forth above, which were false and misleading in that they contained misrepresentations of material facts concerning the adequacy of ARCP's internal controls and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made concerning the adequacy of ARCP's internal controls, not misleading.  Plaintiffs specifically read, reviewed, and relied on the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the 2013 Annual Report, and the false and misleading statements therein, in purchasing/acquiring ARCP common stock.

286.    By reason of the conduct alleged herein, Defendants ARCP, Schorsch, and Block knowingly or recklessly, directly, and indirectly, violated Section 10(b), 15 U.S.C. § 78j, of the

Exchange Act and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in that they made untrue statements of material facts concerning the adequacy of ARCP's internal controls or omitted to state material facts necessary in order to make statements made concerning the adequacy of ARCP's internal controls, in light of the circumstances under which they were made, not misleading, on which Plaintiffs relied in connection with their purchases of ARCP common stock.

287.    As a result of the publication of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of ARCP's common stock was artificially inflated at all relevant times alleged herein.  In particular, the market price of ARCP common stock was artificially inflated due to the materially false and misleading representations and omissions alleged herein at all times when Plaintiffs purchased ARCP common stock.

288.    Ignorant of the fact that the market price of ARCP's publicly traded common stock was artificially inflated, and relying directly upon the false and misleading statements alleged herein, as well as on the integrity of the market in which the common stock traded, and thus indirectly on the false and misleading statements made by Defendants ARCP, Schorsch and Block, and/or on the absence of material adverse information, Plaintiffs acquired ARCP common stock at artificially high prices and were damaged thereby when the truth was revealed.

289.    In purchasing/acquiring ARCP common stock, Plaintiffs' investment team actually read, and had direct eyeball reliance on, on the false and misleading statements made by Defendants ARCP, Schorsch and Block, and/or on the absence of material adverse information.

290.    Had Plaintiffs known of the materially adverse information not disclosed by Defendants ARCP, Schorsch and Block, and known that ARCP's stock price was artificially

inflated due to fraud, Plaintiffs would not have purchased/acquired ARCP common stock at all or not at the inflated prices paid.

291.    Upon disclosure of the true facts that had still been withheld from the market at the time of Plaintiffs' purchases and/or the materialization of the concealed risks, the price of ARCP's common stock declined, and Plaintiffs suffered damages as a result of Defendants ARCP's, Schorsch's and Block's violation of Section 10(b) and Rule 10b-5 in an amount to be proven at trial.  Plaintiffs' damages were the direct and proximate result of Defendants ARCP's, Schorsch's and Block's unlawful conduct as alleged herein.

292.    Plaintiffs have suffered substantial damages in that, in direct reliance on Defendants ARCP's, Schorsch's and Block's false and misleading statements and omissions, they paid artificially inflated prices for ARCP common stock as a result of Defendants ARCP's, Schorsch's and Block's violations of Section 10(b) of the Exchange Act and Rule 10b-5.  At the time of purchase by the Plaintiffs of ARCP's securities, the fair and true market value of said securities was substantially less than the prices paid by them.

293.    By virtue of the foregoing, Defendants ARCP, Schorsch and Block violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

294.    Plaintiffs have brought this claim within two years of discovery of the violations alleged herein, and within five years of the violations alleged herein.  Consequently, this action is timely.

## FOURTH CAUSE OF ACTION

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Misstatements and Omissions in 2013 Annual Report
Concerning Adequacy of ARCP's Internal Controls
Against Defendants ARCP, Kay and McAlister**

295.    The Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

296.    Defendants ARCP, Kay and McAlister knew, or were reckless in failing to know, of the material misrepresentations contained in, and the material omissions from, the 2013 Annual Report concerning the adequacy of ARCP's internal controls.

297.    Defendants Kay and McAlister with knowledge of or reckless disregard for the truth, made, disseminated, and approved the filing with the SEC of the 2013 Annual Report, as set forth above, which were false and misleading in that they contained misrepresentations of material facts concerning the adequacy of ARCP's internal controls and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made concerning the adequacy of ARCP's internal controls, not misleading.  Plaintiffs specifically read, reviewed, and relied on the 2013 Annual Report, and the false and misleading statements therein, in purchasing ARCP common stock.

298.    By reason of the conduct alleged herein, Defendants ARCP, Kay and McAlister knowingly or recklessly, directly, and indirectly, violated Section 10(b), 15 U.S.C. § 78j, of the Exchange Act and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in that they made untrue statements of material facts concerning the adequacy of ARCP's internal controls or omitted to state material facts necessary in order to make statements made concerning the adequacy of ARCP's internal controls, in light of the circumstances under which they were

made, not misleading, on which Plaintiffs relied in connection with their purchases of ARCP common stock.

299.    As a result of the publication of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of ARCP's common stock was artificially inflated at all relevant times alleged herein.  In particular, the market price of ARCP common stock was artificially inflated due to the materially false and misleading representations and omissions alleged herein at all times when Plaintiffs purchased ARCP common stock.

300.    Ignorant of the fact that the market price of ARCP's publicly traded common stock was artificially inflated, and relying directly upon the false and misleading statements alleged herein, as well as on the integrity of the market in which the common stock traded, and thus indirectly on the false and misleading statements made by Defendants ARCP, Kay and McAlister, and/or on the absence of material adverse information, Plaintiffs acquired ARCP common stock at artificially high prices and were damaged thereby when the truth was revealed.

301.    In purchasing/acquiring ARCP common stock, Plaintiffs' investment team actually read, and had direct eyeball reliance on, on the false and misleading statements made by Defendants ARCP, Kay and McAlister, and/or on the absence of material adverse information.

302.    Had Plaintiffs known of the materially adverse information not disclosed by Defendants ARCP, Kay and McAlister, and known that ARCP's stock price was artificially inflated due to fraud, Plaintiffs would not have purchased ARCP common stock at all or not at the inflated prices paid.

303.    Upon disclosure of the true facts that had still been withheld from the market at the time of Plaintiffs' purchases and/or the materialization of the concealed risks, the price of

ARCP's common stock declined, and Plaintiffs suffered damages as a result of Defendants ARCP's, Kay's and McAlister's violation of Section 10(b) and Rule 10b-5 in an amount to be proven at trial.  Plaintiffs' damages were the direct and proximate result of Defendants ARCP's, Kay's and McAlister's unlawful conduct as alleged herein.

304.    Plaintiffs have suffered substantial damages in that, in direct reliance on Defendants ARCP's, Kay's and McAlister's false and misleading statements and omissions, they paid artificially inflated prices for ARCP common stock as a result of Defendants ARCP's, Kay's and McAlister's violations of Section 10(b) of the Exchange Act and Rule 10b-5.  At the time of purchase by the Plaintiffs of ARCP's securities, the fair and true market value of said securities was substantially less than the prices paid by them.

305.    By virtue of the foregoing, Defendants ARCP, Kay and McAlister violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

306.    Plaintiffs have brought this claim within two years of discovery of the violations alleged herein, and within five years of the violations alleged herein.  Consequently, this action is timely.

## FIFTH CAUSE OF ACTION

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
**Misstatements and Omissions Subsequent to 2013 Annual Report**
**Against Defendants ARCP, Schorsch, Kay, Block and McAlister**

307.    The Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

308.    Defendants ARCP, Schorsch, Kay, Block and McAlister knew, or were reckless in failing to know, of the material misrepresentations contained in or made during, and the

material omissions from, the 2014 First Quarter Report, the 2014 Second Quarter Report, and ARCP's Investor Day on or about September 17, 2014.

309.    Defendants Schorsch, Kay and Block, with knowledge of or reckless disregard for the truth, made, disseminated and approved the filing with the SEC of ARCP's 2014 First Quarter Report, as set forth above, which was false and misleading in that it contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  Plaintiffs specifically read, reviewed, and relied on the 2014 First Quarter Report, and the false and misleading statements therein, in purchasing ARCP common stock.

310.    Defendants Schorsch, Kay, Block and McAlister, with knowledge of or reckless disregard for the truth, made, disseminated and approved the filing with the SEC of ARCP's 2014 Second Quarter Report, as set forth above, which was false and misleading in that it contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  Plaintiffs specifically read, reviewed, and relied on the 2014 Second Quarter Report, and the false and misleading statements therein, in purchasing ARCP common stock.

311.    Defendants Kay, with knowledge of or reckless disregard for the truth, made statements during ARCP's earnings call on or about July 29, 2014, as set forth above, which were false and misleading in that they contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  Plaintiffs specifically reviewed and relied on these false and misleading statements in purchasing ARCP common stock.

312.     Defendant Block, with knowledge of or reckless disregard for the truth, made public statements on or about September 17, 2014, during ARCP's Investor Day, as set forth above, which were false and misleading in that they contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  Plaintiffs specifically reviewed and relied on these false and misleading statements in purchasing ARCP common stock.

313.     By reason of the conduct alleged herein, Defendants ARCP, Schorsch, Kay, Block and McAlister knowingly or recklessly, directly and indirectly, violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in that it made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, on which Plaintiffs relied in connection with their purchases of ARCP common stock.

314.     As a result of the publication of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of ARCP's common stock was artificially inflated at all relevant times alleged herein.  In particular, the market price of ARCP common stock was artificially inflated due to the materially false and misleading representations and omissions alleged herein at all times.

315.     In purchasing/acquiring ARCP common stock, Plaintiffs' investment team actually read, and had direct eyeball reliance on, on the false and misleading statements made by Defendants ARCP, Schorsch, Kay, Block and McAlister and/or on the absence of material adverse information.

316.    Ignorant of the fact that the market price of ARCP's publicly traded common stock was artificially inflated, and relying directly upon the false and misleading statements alleged herein, as well as on the integrity of the market in which the common stock traded, and thus indirectly on the false and misleading statements made by Defendants and/or on the absence of material adverse information, Plaintiffs acquired ARCP common stock at artificially high prices and were damaged thereby when the truth was revealed.

317.    Had Plaintiffs known of the materially adverse information not disclosed by Defendants, and known that ARCP's stock price was artificially inflated due to fraud, Plaintiffs would not have purchased ARCP common stock at all or not at the inflated prices paid.

318.    Upon disclosure of the true facts that had still been withheld from the market at the time of Plaintiffs' purchases and/or the materialization of the concealed risks, the price of ARCP's common stock declined, and Plaintiffs suffered damages as a result of Defendants' violation of Section 10(b) and Rule 10b-5 in an amount to be proven at trial.  Plaintiffs' damages were the direct and proximate result of Defendants' unlawful conduct as alleged herein.

319.    Plaintiffs have suffered substantial damages in that, in direct reliance on Defendants' false and misleading statements and omissions, they paid artificially inflated prices for ARCP common stock as a result of Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5.  At the time of purchase by the Plaintiffs of ARCP common stock, the fair and true market value of said securities was substantially less than the prices paid by them.

320.    By virtue of the foregoing, Defendants ARCP, Schorsch, Kay, Block and McAlister violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

321.    Plaintiffs have brought this claim within two years of discovery of the violations alleged herein, and within five years of the violations alleged herein.  Consequently, this action is timely.

## SIXTH CAUSE OF ACTION

### Violations of Section 20(a) of the Exchange Act
### Against Defendants Schorsch, Kay, Block and McAlister

322.    Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

323.    To the extent that any of Defendants Schorsch, Kay, Block and/or McAlister are not found to be liable for any of the statements in the Third, Fourth and Fifth Cause of Action above, as applicable, this Count is asserted in the alternative against Defendants Schorsch, Kay, Block, and McAlister and is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

324.    Defendants Schorsch, Kay, Block, and McAlister were at the time of the wrongs alleged herein each a controlling person of ARCP within the meaning of Section 20(a) of the Exchange Act.

325.    Defendants Schorsch, Kay, Block, and McAlister had the power and influence, and did in fact exercise that power and influence, to cause ARCP to issue the statements set forth above.

326.    As the founder, CEO, and Chairman of ARCP, Schorsch was intimately familiar with, and exercised substantial control over, every aspect of ARCP's business.  Schorsch specifically directed ARCP to commit improper accounting with respect to AFFO in ARCP's 2014 First Quarter Report.  Moreover, on or about July 28, 2014, Schorsch willfully directed Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter

Report by converting to reporting AFFO on a gross basis and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report.

327.     As the President of ARCP, Kay took control of the day-to-day operations of ARCP.  Kay directed Block and McAlister not to correct or disclose the improper accounting in the 2013 Annual Report.  Kay then directed ARCP to continue to use the improper accounting with respect to AFFO in the 2014 First Quarter Report.

328.     As the CFO of ARCP, Block bore the ultimate responsibility for ARCP's finances.  Block was responsible for concealing in the 2014 Second Quarter Report the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report.

329.     As the CAO of ARCP, McAlister was in charge of ARCP's accounting. McAlister willfully signed the 2014 Second Quarter Report despite knowing of the fraudulent accounting contained in such report.

330.     By reason of the conduct alleged in Counts III-V of the Complaint, Defendant ARCP is liable for violations of Section 10(b) and Rule 10b-5 promulgated thereunder, and Defendants Schorsch, Kay, Block and McAlister, as applicable, are liable based on their control of ARCP.

331.     Defendant Schorsch culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Counts III-V because he specifically directed ARCP to use improper accounting with respect to AFFO in the 2014 First Quarter Report, and willfully directed Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to reporting AFFO on a gross basis and cooking the books in the 2014 Second Quarter Report.

332.    Defendant Kay culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Counts IV-V because Kay directed Block and McAlister not to correct or disclose the improper accounting in the 2013 Annual Report and directed ARCP to continue to use the improper accounting with respect to AFFO in the 2014 First Quarter Report.

333.    Defendant Block culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Counts III-V because Block learned of the improper accounting in the 2013 Annual Report with respect to AFFO in or around February 2014, yet did nothing to correct the accounting error in the 2013 Annual Report or to prevent the improper accounting being repeated in the 2014 First Quarter Report.   At Schorsch's behest, Block then attempted to conceal the improper accounting by converting to reporting AFFO on a gross basis and cooking the books in the 2014 Second Quarter Report.

334.    Defendant McAlister culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Counts IV-V because she became aware of the improper accounting with respect to AFFO in the 2013 Annual Report in or around February 2014, yet she did nothing to correct the accounting error or to prevent the improper accounting from being repeated in the 2014 First Quarter Report.   McAlister also was fully aware of Schorsch's direction to Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to reporting AFFO on a gross basis and cooking the books in the 2014 Second Quarter Report.   McAlister willfully signed the 2014 Second Quarter Report despite knowing of the fraudulent accounting contained in such report.

335.    Defendants Schorsch, Kay, Block and McAlister are liable for the aforesaid wrongful conduct, and are liable to Plaintiffs for the substantial damages which they suffered in connection with their purchases of ARCP common stock.

336.     Plaintiffs have brought this claim within two years of discovery of the violations alleged herein, and within five years of the violations alleged herein.  Consequently, this action is timely.

## SEVENTH CAUSE OF ACTION

**Common Law Fraud Under New York Law**
**Misstatements and Omissions in Cole Merger Registration Statement and  2013 Annual Report Concerning Adequacy of ARCP's Internal Controls**
**Against Defendants ARCP, Schorsch and Block**

337.     Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

338.     As alleged above, Defendants ARCP, Schorsch and Block made material misrepresentations and omitted to disclose material facts in the 2012 Annual Report, the 2013 First Quarter Report, the 2013 Second Quarter Report, the 2013 Third Quarter Report, and the 2013 Annual Report concerning the adequacy of ARCP's internal controls.

339.     These misrepresentations and omissions concerning the adequacy of ARCP's internal controls were made intentionally, or at a minimum, recklessly, to induce reliance thereon by Plaintiffs when making decisions to invest in ARCP stock.

340.     These misrepresentations and omissions concerning the adequacy of ARCP's internal controls constitute fraud and deceit under New York law.

341.     Plaintiffs actually and reasonably relied upon the representations when making decisions to purchase ARCP common stock and did not know of any of the misrepresentations or omissions.

342.     As a direct and proximate result of the fraud and deceit by Defendants ARCP, Schorsch and Block, Plaintiffs suffered damages in connection with their investment in ARCP common stock.

343.     Defendants ARCP, Schorsch and Block's wrongful conduct, as described above, was malicious, reckless, willful, and was directed at the general investing public.  Accordingly, punitive damages, in addition to compensatory damages, are appropriate to deter fraudulent conduct of this kind.

### EIGHTH CAUSE OF ACTION

**Common Law Fraud Under New York Law**
**Misstatements and Omissions in 2013 Annual Report**
**Concerning Adequacy of ARCP's Internal Controls**
**Against Defendants ARCP, Kay and McAlister**

344.     Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

345.     As alleged above, Defendants ARCP, Kay and McAlister made material misrepresentations and omitted to disclose material facts in the 2013 Annual Report concerning the adequacy of ARCP's internal controls.

346.     These misrepresentations and omissions concerning the adequacy of ARCP's internal controls were made intentionally, or at a minimum, recklessly, to induce reliance thereon by Plaintiffs when making decisions to invest in ARCP stock.

347.     These misrepresentations and omissions concerning the adequacy of ARCP's internal controls constitute fraud and deceit under New York law.

348.     Plaintiffs actually and reasonably relied upon the representations when making decisions to purchase ARCP common stock and did not know of any of the misrepresentations or omissions.

349.    As a direct and proximate result of the fraud and deceit by Defendants ARCP, Kay and McAlister, Plaintiffs suffered damages in connection with their investment in ARCP common stock.

350.    Defendants ARCP, Kay and McAlister's wrongful conduct, as described above, was malicious, reckless, willful, and was directed at the general investing public.  Accordingly, punitive damages, in addition to compensatory damages, are appropriate to deter fraudulent conduct of this kind.

### NINTH CAUSE OF ACTION

**Common Law Fraud Under New York Law**
**Misstatements and Omissions Subsequent to 2013 Annual Report**
**Against Defendants ARCP, Schorsch, Kay, Block and McAlister**

351.    Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

352.    As alleged above, Defendants ARCP, Schorsch, Kay, Block and McAlister made material misrepresentations and omitted to disclose material facts in and about the 2014 First Quarter Report, the 2014 Second Quarter Report, the earnings call on or about July 29, 2014, and ARCP's Investor Day on or about September 17, 2014.

353.    These misrepresentations and omissions were made intentionally, or at a minimum, recklessly, to induce reliance thereon by Plaintiffs when making decisions to invest in ARCP common stock.

354.    These misrepresentations and omissions constitute fraud and deceit under New York law.

355.     Plaintiffs actually and reasonably relied upon the representations when making decisions to purchase ARCP common stock and did not know of any of the misrepresentations or omissions.

356.     As a direct and proximate result of the fraud and deceit by Defendants ARCP, Schorsch, Kay, Block and McAlister, Plaintiffs suffered damages in connection with their investment in ARCP common stock.

357.     Defendants' wrongful conduct, as described above, was malicious, reckless, willful, and was directed at the general investing public.  Accordingly, punitive damages, in addition to compensatory damages, are appropriate to deter fraudulent conduct of this kind.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief and judgment, as follows:

(a) Awarding compensatory damages against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(b)  Awarding punitive damages against Defendants ARCP, Schorsch, Kay, Block and McAlister;

(c) Awarding Plaintiffs their reasonable costs and expenses incurred in this action; and

(d) Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

The Plaintiffs hereby demand a trial by jury as to all issues so triable.


Dated: July 8, 2016
       New York, New York

                        LOWENSTEIN SANDLER LLP


                        By:____/s/ Lawrence M. Rolnick_____
                            Lawrence M. Rolnick
                            Marc B. Kramer
                            Michael J. Hampson
                            1251 Avenue of the Americas
                            New York, NY  10020
                            Tel. 212.262.6700