# Exhibit ARC-D

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE

1615 M STREET, N.W.

SUITE 400

WASHINGTON, D.C. 20036-3215

———

(202) 326-7900

FACSIMILE:
(202) 326-7999

November 24, 2016

*Via Electronic Mail*

Debra J. Wyman, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway Suite 1900
San Diego CA 92101

     Re:    *In re American Realty Capital Properties, Inc.* Litigation, Civil Action No. 1:15-mc-00040-AKH (S.D.N.Y.).

Dear Debra:

     We write on behalf of Defendants AR Capital, LLC and ARC Properties Advisors, LLC (collectively, the "ARC Defendants") in regard to our recent correspondence and our meet-and-confer call of November 14, 2016.

     *First*, with respect to the production-related matters that you raised in your email of November 11, 2016, we are prepared to proceed as follows, provided that Plaintiffs confirm that they are also prepared to produce information in the format that they have requested.

- You have raised questions about the production of documents in color, and in our call you requested the production of PowerPoint documents in native format. We believe that, as a technical matter, PowerPoint documents that have not been redacted can be produced in native format. We note, however, that the Protective Order provides that "PowerPoint presentations, and any speaker notes from PowerPoint presentations, shall be produced as TIFF images." Protective Order ¶ 3(c)(i) (Dkt. No. 324) (Nov. 15, 2016). Please let us know how Plaintiffs propose that the parties proceed in view of this provision.

- You have asked that we clarify how stand-alone electronic documents will be de-duplicated. We have consulted with our vendor, who advises that we are not de-duplicating stand-alone documents against email attachments, and that de-duplication is done on a parent-level only. In addition, for de-duplication of

Debra J. Wyman, Esq.
November 24, 2016
Page 2

>   stand-alone documents, we are prepared to provide duplicate custodian and duplicate file path fields for any stand-alone e-documents, which will provide the original values of these fields for all copies of a document that was ingested.

- We will include the additional metadata fields that you asked be included, and will include "Time" in the "Create Date," and "Last Modified Date" fields.

- For redaction of Excel files, we do not believe we will have extensive redaction of these documents, and so do not think use of native redaction tools is needed.

- You have advised that, with respect to email threading, you do not object to our "reviewing only the most inclusive email thread but [you request] production of all emails in the thread to ensure that metadata for each email in the thread is provided." Email from D. Wyman to R. Beynon (Nov. 11, 2016). We advised you that we would be applying threading to emails on October 10, 2016. At this stage in the review, it would require significant effort to add additional documents into the production workflow. Additionally, our vendor advises that substantial cost would be incurred in TIFF'ing the lower-chain emails. In an effort to accommodate Plaintiffs' requests, however, we are willing to ask our vendor to provide a DAT file that includes metadata for lesser emails in the threads.

*Second*, we also discussed Plaintiffs' requests regarding search terms. We explained again that Plaintiffs' proposed search terms are vastly overbroad, in that they include no modifiers designed to limit the "hits" to those documents that actually concern ARCP – as opposed to other REITs that the ARC Defendants sponsored or managed. As we explained to you in our November 2 call, unless these modifiers are included, an unreasonably large volume of "false positives" will be generated. We had already offered to include several of the searches Plaintiffs proposed, with modifications to limit them to the documents that concern ARCP ("ARCP-limiters"). However, you have refused to agree to our proposed compromise. Moreover, we have requested on several occasions that Plainitffs narrow the list of terms they have provided, and you have declined to offer any alternatives, asserting that the terms you have provided are necessary to ensure the production of "all" responsive documents. Accordingly, we have conducted follow-up evaluation on your proposed terms.

- Our vendor advises that including additional documents that "hit" on Plaintiffs' proposed terms would increase the review population by a volume of documents that is approximately *triple* the number of documents that have already been reviewed for responsiveness using the search terms circulated to you on October 10, 2016.

Debra J. Wyman, Esq.
November 24, 2016
Page 3

- We worked with our vendor to generate a random sample of documents that "hit" on Plaintiffs' terms and had not yet been included in the review population. Specifically, our vendor generated a random sample of documents that "hit" on Plaintiffs' terms sufficient to provide a confidence level of 95% and a confidence interval of $\pm$ 2.5%.

- Documents in the sample were reviewed for responsiveness. Approximately 7% of the documents in the sample were responsive. This is a responsiveness rate that is orders of magnitude lower than the responsiveness rate for the documents identified using the search terms we provided to you on October 10, 2016. In addition, only 0.16% of the documents in the sample were responsive documents that did *not* also contain an ARCP-limiter (i.e., virtually all of the documents in the small set identified as responsive contained some reference to ARCP).

- Approximately 60% of the small set of documents identified as responsive contained the following terms and an ARCP-limiter:

| Search String | |
|---|---|
| Offer* w/20 (Debt OR Note* OR Bond* OR Stock*) | 13.9% |
| "grant thornton" OR gt* OR *@us.gt.com | 22.8% |
| S&P OR Fitch OR Moody* OR "standard and poors" | 13.9% |

In view of the foregoing, there is no basis for Plaintiffs to continue to insist that the ARC Defendants use search terms without ARCP-limiters to identify potentially responsive documents. Moreover, the low rate of responsiveness generated by Plaintiffs' terms does not warrant burdening the ARC Defendants with the work of reviewing "hits" on these terms, even with the addition of ARCP-limiters. Accordingly, our mid-December production of ESI will be based on the terms that we provided to you on October 10, 2016. To the extent that the Plaintiffs wish to discuss these matters further, we are available at your convenience.

*Finally*, with respect to Document Request No. 22, during our November 2 call Plaintiffs took the position that the ARC Defendants should produce documents concerning compensation received by the Manager or Director Defendants not only in their ARCP capacities, but also in their capacities as directors or officers of AR Capital and ARC Advisors. In our call of November 14, however, you advised that Plaintiffs seek production relating to all compensation, regardless of source. We followed up by email asking Plaintiffs to explain why documents concerning "all compensation" to the Manager/Director Defendants, regardless of source, is relevant to the issues in this litigation, but we have not heard back. *See* Email from R. Beynon to D. Wyman (Nov. 14, 2016). Accordingly, the ARC Defendants intend to limit production to documents sufficient to show compensation received by Manager or Director Defendants from ARCP and, in their capacities as directors or officers, from AR Capital or ARC Advisors.

Debra J. Wyman, Esq.
November 24, 2016
Page 4

      We are available to discuss any of the foregoing at your convenience.

                Very truly yours,

                Rebecca A. Beynon

cc: Plaintiffs' counsel